Kuhl, Plaintiff in error, vs. The State, Defendant in error.

*May 4—May 21, 1918.*

*Homicide: Reasonable doubt: New trial: Duty of trial judge.*

1. A conviction of manslaughter in the fourth degree, of a man
   charged with murder of his wife, is reversed and a new trial
   granted on the ground that there was plainly, on the evidence,
   a reasonable doubt as to his guilt.
2. Where, upon the evidence in such case, the trial judge expected
   an acquittal, thought it was as likely that the wife's death re-
   sulted from her being knocked down twice by a bull as that it
   was caused by a blow or blows from the husband, and, if
   he had been upon the jury, "could not conscientiously have
   found the defendant guilty," it was his duty to set aside the
   verdict.

Error to review a judgment of the circuit court for Grant
county: George Clementson, Circuit Judge. *Reversed.*

Christine Kuhl, wife of plaintiff in error, died Friday,
August 27, 1915, having been unconscious from 9 o'clock in
the evening of Wednesday, August 25th.  The plaintiff in
error, her husband, was charged with the murder of his wife,
and upon the trial a verdict of guilty of manslaughter in the
fourth degree was returned.  The motion for a new trial
was denied and the defendant, plaintiff in error, sentenced
to two years in the state prison, and brings such judgment
here for review.

For the plaintiff in error there was a brief by *Gardner &
Gardner* and *J. W. Murphy* of Platteville, and oral argu-
ment by *Mr. Daniel Gardner, Jr.,* and *Mr. Murphy.*

For the defendant in error there was a brief by the *At-
torney General* and *J. E. Messerschmidt,* assistant attorney
general, and oral argument by *Mr. Messerschmidt.*

Eschweiler, J.   The deceased was pregnant at the time
of her death.   The testimony disclosed that at a post-mortem

examination the physicians discovered, upon removing the upper part of the skull, that the left temporal muscle showed evidence of having been injured by violence and on the opposite side of the skull a hemorrhage had taken place, and that this, in their opinion, was caused by external force or violence and was the cause of her death.    These physicians were not asked and did not testify as to whether the indications discovered by them disclosed in any way the nature of the blow, if such it was, that produced the injury causing the fatal hemorrhage.    There was a small discolored area on the right hip, a larger area on the left hip, and a small one between her shoulders, but no other external signs of injury.

The testimony of members of the family showed that the deceased, about 9 o'clock on Wednesday evening, got up out of her bed and asked her husband to open the door as she felt she must vomit; that she went to the front door and there fell over outside the house; that her husband and his brother picked her up and laid her on the floor upon quilts or comforters arranged for that purpose by the husband; that she remained there during the night and part of the next day; that a physician was called in the afternoon of Thursday and a nurse was in attendance from this on until the death on Friday; that a premature birth occurred after the arrival of the physician and during her unconsciousness, which continued from Wednesday night.

The state contends that the evidence supports the theory that sometime during the afternoon or early evening of Wednesday the defendant quarreled with his wife and during such quarrel he struck her, causing the injury to her head, the hemorrhage, and consequent death.    A witness for the state testified that while he was some 900 feet away from the Kuhl house at about 7 o'clock, he heard a long scream from a woman and then a man swearing; that the sounds were coming right from *Kuhl's* barnyard; that it sounded, as he expressed it, "an awful lot like *Kuhl's* voice."    There was

testimony tending to show that the defendant admitted to several that he had difficulties with his wife that evening. No one, however, testified to anything in the nature of an admission made by the defendant that he had struck her on that occasion or caused her injury. Evidence was received of former difficulties between *Kuhl* and his wife and that at one time he pleaded guilty to a charge of assault and battery on her.

The defendant in testifying denied any assault or injury to his wife; and his own and the testimony of a son, eleven years of age at the time of the occurrence, was to the effect that the deceased had stated on the Wednesday evening that while driving the cows from the pasture that afternoon she had been struck by a dehorned Holstein bull kept by the defendant on the farm. The son testified of coming home on the evening in question and finding his mother, father, and little sister milking, that his mother's dress was torn and dusty and her face looked flushed, and that she was not as usual, and that she said the bull had hooked her.

There are some apparent discrepancies in various statements made by the defendant as well as the boy as to these occurrences and as to the statements by the mother.

A physician called as a witness by the defendant, in answer to a hypothetical question which included the facts testified to by the physicians who had made the examination of the body of the deceased, and the theory of the defendant that the injury had been caused by deceased being knocked to the ground by the bull, stated that in his opinion she probably received a blow on the left hip which knocked her down, abrasing her right elbow and right hip, and that then another blow was received on the left side of the head which would account for the hemorrhage; and that the further circumstances embraced in the question and appearing from the testimony of the members of the family of her assisting in milking, in preparing the supper, and other household duties be-

fore she became unconscious on the Wednesday evening, all could naturally have occurred upon the theory of being injured by the bull and account for her subsequent condition and death. No other or further testimony was offered by the state than what has been mentioned above with reference to the probable nature of the injury.·

The impression that this entire evidence made upon the trial court can be best shown by the following extracts from his decision on a motion for a new trial:

"Upon the entire evidence in the case and the law given to the jury, I expected a verdict of acquittal. I have very thoroughly considered this motion for a new trial and the case as a whole. The serious doubt I had as to the justice of this verdict when it was rendered is still with me, and I have puzzled over the question of what action I should take upon this motion. It seemed to me upon the trial that there was another hypothesis arising from the evidence to account for the death of Mrs. Kuhl other than that her husband caused her death. I thought that it was as likely that her death was caused by being knocked down twice by a bull as that it was caused by a blow or blows from the husband which left no external marks whatever; that the one was as probable as the other." . . .

"It is evident to me now, in view of what the testimony developed as to the cause of death, that probable injury was done to the defendant by the wide latitude the court permitted in the introduction of evidence against the defendant." . . .

"If I .had been upon the jury I could not conscientiously have found the·defendant guilty. I recognize that the jury were the sole judges of the weight of the testimony and that if a conviction can stand at all upon the testimony in this case I would not grant a new trial; and it is my opinion now that I ought not to do so, because in view of the feeling this case has caused, it is my judgment that the proper course to be pursued is for me to refuse to grant the motion for a new trial, so that this case can be taken by writ of error to the supreme court and the opinion of that court taken upon whether the testimony will sustain the conviction. If that

court should so determine, I can conscientiously sentence the defendant. If they should find that my view that the testimony did not warrant the verdict should be sustained, then there would be a vindication of the defendant from this serious charge, and the county would not be put to further cost in this case, as it would be if a new trial were granted."

Without going further into the details of this unfortunate affair, we are satisfied from a consideration of this record before us that there is a robust reasonable doubt plainly standing out in this record as to the guilt of the defendant and it is such that our consciences cannot approve of a conviction founded upon such testimony.

Where the evidence on a trial produces the impression upon the trial court such as it did in this case, it becomes his duty under the law of this state to set such a verdict aside. *B—— v. State,* 166 Wis. 525, 166 N. W. 32.

With the impression that the evidence in this record makes upon us, we can pursue no other course than to direct the court below, as we now do, to set aside the verdict and give a new trial. *Koscak v. State,* 160 Wis. 255, 269, 152 N. W. 181; *Abaly v. State,* 163 Wis. 609, 613, 158 N. W. 308.

*By the Court.*—Judgment reversed, and the cause remanded with directions to set aside the verdict and grant a new trial.

Owen, J., took no part.