RODERMUND, Plaintiff in error, vs. THE STATE, Defendant in error.

*May 21—June 19, 1918.*

*Criminal law: Procuring miscarriage: Use of instruments: Intent: Revocation of physician's license upon conviction of crime: Statute construed: Constitutional law: Evidence: Relevancy: Opinions: Harmless errors.*

1. The conviction of a physician of the offense of having used instruments in the treatment of a pregnant woman with intent to procure a miscarriage, is *held* to be sustained by the evidence.
2. It is immaterial in such case, under sec. 4583, Stats., whether or not a miscarriage was in fact procured, if the instruments were used with intent to procure a miscarriage.
3. Upon conviction in such case a revocation of the defendant's license to practice medicine and surgery was properly adjudged, under sec. 1435*i*, Stats. That section does not provide for an additional criminal punishment, constituting cruel and unusual punishment within the meaning of sec. 6, art. I, Const. It merely provides that the court shall do directly and forthwith in the criminal proceeding what might be done in subsequent civil proceedings.
4. The word "shall" in said sec. 1435*i*, Stats., is mandatory, the legislative intention being that a criminal conviction shall be con-

clusive as to the unfitness of the licensee to continue in the prac-
tice of his profession.

5. The term "crime," as used in sec. 1435i, Stats., embraces the vio-
lation of any penal law of the state, and includes all felonies
and misdemeanors under the law of the state committed by the
offender "in the course of his professional conduct."

6. In a prosecution under sec. 4583, Stats., for using instruments in
the treatment of a pregnant woman with intent to procure a
miscarriage, evidence that defendant was instrumental in not
having the woman taken to a hospital for care and treatment
was relevant and was properly received; and another physi-
cian, who examined and treated the woman after defendant had
had her in charge, was properly permitted to give his opinion,
based on her condition and age, that a miscarriage does not
often occur in such cases unless artificial means are employed.

7. In such a case the admission in evidence of a statement made by
the woman to her sister in the absence of defendant, concerning
her visit to the defendant's office, having relation only to facts
which were practically uncontroverted and appeared by other
evidence in the case, is *held* not to have been prejudicial error.
ESCHWEILER and KERWIN, JJ., dissent.

ERROR to review a judgment of the circuit court for Dane
county: E. RAY STEVENS, Circuit Judge. *Affirmed.*

The plaintiff in error (hereinafter called defendant) was
convicted of the offense of having used instruments in the
treatment of a pregnant woman with intent to procure a mis-
carriage, as denounced by the provisions of sec. 4583, Stats.
The circuit court sentenced the defendant by the imposition of
a fine and the costs of the action, and in default of the payment
of such fine and costs committed him to the county jail for a
period not to exceed six months.

*King M. Bacon* of Madison, for the plaintiff in error.

For the defendant in error there was a brief signed by the
*Attorney General, Harry Sauthoff,* district attorney for Dane
county, and *J. E. Messerschmidt,* assistant attorney general;
and the cause was argued orally by *Mr. Sauthoff* and *Mr.
Messerschmidt.*

SIEBECKER, J.    The defendant insists that the trial court
erred in submitting the question of his guilt or innocence to

the jury, and claims that the evidence does not sustain the charge preferred against him of having used and employed instruments upon the person of a pregnant woman with the intent to produce a miscarriage. Upon the motion of the accused for a new trial the trial court declared that "during the trial the testimony satisfied the court of the guilt of the defendant beyond a reasonable doubt . . . The court has also examined the evidence in the case in the light of the argument made in defendant's brief and the statements made in the oral argument. The court has read all of the cases cited by the defendant. After this study of the case it is still the solemn opinion of the court that the evidence establishes the guilt of the defendant beyond all reasonable doubt."

. The evidence adduced shows that the defendant was on July 27, 1917, consulted for treatment by an unmarried woman of the age of twenty years who had been pregnant for a period of from two to three months. The defendant testified that the woman was then in a cyanosed condition and in a critical state of health which he attributed to her having taken a large quantity of Chichester pills, and that he agreed to give her medical treatment. The evidence of the woman tends to show that defendant at this interview consented to treat her upon condition that she pay him $50 in advance and that there was some conversation as to the necessity of preventing publicity of the fact of her condition and his treatment of her under these circumstances. The defendant testifies that whatever was said by him on the subject was in response to her request to protect her in her unfortunate situation, while the woman's testimony is in substance that defendant suggested absolute secrecy for his protection against unjust prosecution for rendering her medical aid and assistance in her affliction. By appointments the woman called at defendant's office on the third day after the first interview and paid him $50, or $35 as defendant testifies. She made a third call three days after the second one. On both of these last occasions defend-

ant used instruments upon her.    The woman is unable to state what they were, but testifies that the use of them caused her pain, followed by menstruation; that she went about for three days after the first treatment without much pain or inconvenience, but that the last treatment was accompanied and followed by severe pain and consequent weakness and confinement to her bed.    The defendant was called to her bedside on the day after the second treatment, at the home where the woman's sister was employed as a domestic, and was requested by the sister's mistress to remove the woman to a hospital. Defendant removed her from this place to a room in a private home of one of his friends who had cared for some of his patients theretofore.    The defendant claims he did this because he had had trouble at the two available hospitals regarding his patients, and that the room in the private home was a comfortable and appropriate one for her care and would not expose her condition to the publicity which would follow had he taken her to a hospital.    Two days thereafter the woman was taken to a hospital without the consent or knowledge of the defendant and there received treatment from another doctor and hospital care for about one week.    The doctor employed to attend her at the hospital testifies, in substance, that he performed an operation of curettement on her (which was on the third day after the last treatment defendant gave her at his office); that he removed the placenta, found no fœtus, and from appearance it was his opinion that pregnancy had existed from two to three months; that he could not state whether or not the fœtus had been expelled by artificial means; that the use of a speculum and tenaculum forceps in treatments of a pregnant woman would not produce abortion; that he did not know whether this miscarriage was produced by drugs or other means; and that if the woman was in the condition testified to by the defendant when he treated her it would indicate that a miscarriage was then in progress.    The defendant testified in substance that he found the woman in process of

miscarriage, that he rendered proper medical aid for such condition, that he did nothing to produce a miscarriage, that his treatment of her was for alleviating her serious condition and to protect her life, that he did nothing to prevent publicity of his connection with or treatment of her case aside from what proper professional conduct demanded of him in compliance with her wishes, that all of his professional services were rendered for the purpose of giving her proper medical care, and that he had no intent to do anything to procure a miscarriage.

To ascertain the true significance of all the facts and circumstances shown by the evidence requires a consideration of it in all its details that cannot be fully restated here. The proper inference from the evidence is necessarily dependent upon the credibility and weight which is given to the statements of the various persons who testified. The case is therefore one where the jury and the trial court, who saw the witnesses on the stand and observed them while testifying, could much better ascertain the probative force of the evidence than can be ascertained by a review of the printed record. The facts and circumstances shown are, as to their significance and the inferences to be drawn therefrom as to defendant's guilt or innocence, peculiarly within the function to be exercised by the triers of fact. The offense charged involves the inquiry, With what intent did the defendant give this woman the treatment he testified to? Such intent is a fact which must be ascertained from a consideration of the facts and circumstances which throw light on defendant's conduct and acts. If he had the felonious intent of producing a miscarriage, then guilt is established though he did not in fact procure a miscarriage. An attentive study of the evidentiary facts in all their bearing upon defendant's acts in relation to the charge preferred against him has persuaded us of the correctness of the conclusion of the jury and trial court. We are of the opinion that the evidence amply justifies and sustains

the verdict of the jury and the judgment of the trial court and that the record establishes the defendant's guilt.

It is urged that the court erred in applying the following provision of sec. 1435$i$, Stats., and adjudging a revocation of defendant's license to practice surgery and medicine:

". . . If any person licensed or registered by said board shall be convicted of any crime, committed in the course of his professional conduct, the court in which said conviction is had shall in addition to any other punishment imposed pursuant to law revoke said license or certificate."

It was held in *State v. Lewis,* 164 Wis. 363, 159 N. W. 746, that the effect of this statute "is simply to give, as an incident to such conviction, power to the court in the criminal proceeding to do directly and forthwith what might be done in subsequent civil proceedings." We are persuaded that this interpretation of the statute is correct, and hence the contention of the defendant that it provides additional criminal punishment and that it constitutes cruel and unusual punishment is without merit. The term "crime" as used in this provision was manifestly employed to embrace the violation of any penal law of the state, and clearly includes all felonies and misdemeanors under the law of the state committed by the offender in the course of his professional conduct. The terms of the statute leave no room for different interpretation of the word "shall" in the provision that the court, upon record of conviction, "shall" revoke the license or certificate of the person convicted. It is apparent that the legislature intended that a criminal conviction of any such licensed or registered person shall be deemed to be a conclusive test of unfitness of such person to further continue in the practice of his profession and made it mandatory on the court to revoke such license. This is properly a legislative question. "The nature and extent of the qualifications required must depend primarily on the judgment of the state as to their necessity." *Dent v. West Virginia,* 129 U. S. 114, 9 Sup. Ct. 231; *State v. Schaeffer,*

129 Wis. 459, 109 N. W. 522; *Hawker v. New York,* 170 U. S. 189, 18 Sup. Ct. 573.

An exception is urged to the court's additional and unrequested instruction to the jury upon their return to the court room after having deliberated on the case twenty-four hours, upon the question of the defendant's use of instruments to produce a miscarriage. The court stated to them:

"You are not concerned upon that branch of the case with the question of whether he did actually produce a miscarriage or not. The question is: 'Did he use these instruments with the purpose and with the intent of producing a miscarriage.'"

The instruction embodies a correct statement of the law applicable to the case and was given in a proper manner and on an appropriate occasion. The record discloses nothing to indicate that the defendant could have been prejudiced thereby in any respect. The record also shows that the court accorded defendant's counsel full privilege to present the grounds upon which it is claimed the evidence fails to sustain the verdict in the case and to submit a brief on the question.

Evidence was received tending to show that the defendant was instrumental in not having the woman taken to the hospital for care and treatment; and Dr. Sommers, who examined and treated the woman after defendant had had her in charge, was permitted to give in evidence his opinion, based on her condition and age, that a miscarriage does not often occur in such cases unless artificial means are employed. This evidence was relevant to the issues being tried and tended to aid the court and jury in determining the facts at issue. No grounds are shown indicating that its reception was prejudicial to the defendant.

The reception in evidence of a statement made by the woman to her sister in the absence of defendant, concerning her visit to the defendant's office, relates only to the fact that she had visited defendant to secure treatment for relief concerning her menstrual troubles. This evidence deals with

facts that stand practically uncontroverted and appear by other evidence in the case. Under the circumstances we perceive no prejudicial effect of these statements so given in evidence by the sister on defendant's rights. We have examined the other exceptions to rulings on evidence and find the record free from prejudicial error in the light of provisions of sec. 3072m, Stats., and the following cases: *Oborn v. State,* 143 Wis. 249, 126 N. W. 737; *Schumann v. Kaukauna,* 163 Wis. 396, 158 N. W. 71; *Radej v. State,* 152 Wis. 503, 140 N. W. 21.

The proceedings on the trial disclose that the accused had a fair trial, and the judgment of the circuit court must stand.

*By the Court.*—The judgment is affirmed.


Eschweiler, J. (*dissenting*). A consideration of the record convinces me that the testimony falls short of measuring up to the salutary rule that it should exclude a reasonable doubt as to defendant's guilt.

The unfortunate girl in this case had commenced taking pills for the avowed purpose of starting menstruation, and that meant, beyond question, an abortion. She had had pains and been sick, for a day or two at least, before her first visit to defendant, and on the preliminary examination she said that she went to his office to get help to relieve her from the pain she was in. The physician who subsequently attended her at the hospital testified for the state and said that if a miscarriage was in process even at that early stage of pregnancy it would be accompanied by labor pains.

There is an entire absence of any evidence as to when the foetus was expelled, and it is therefore mere conjecture that it happened subsequent to any examination or treatment by the defendant. If it was before, then of course at the time she visited him she was not pregnant, within the terms of the statutes.

The physician who removed parts of the afterbirth, or

placenta, testified in answer to a question as to whether the condition he then found was due to natural processes: "That would be hard to say, except if I may qualify the statement that miscarriage or abortion does not often happen unless something has been done to force it." By that is meant— "artificial means." The following question was asked him and answer made on redirect examination: "Counsel for defense has asked you as to whether or no abortion or miscarriage may occur as a result of falls and bumps and jars or excessive intercourse. Would you judge from your examination in this case and your experience in regard to cases of a similar nature that that was true in this case? A. I couldn't tell that."

There does not seem to be a sufficient foundation in this case upon which a verdict of guilty should stand, and it is because it has been clearly declared by the legislature, by sec. 4719, Stats., as well as such decisions as *Prinslow v. State,* 140 Wis. 131, 121 N. W. 637; *Abaly v. State,* 163 Wis. 609, 158 N. W. 308; *B—— v. State,* 166 Wis. 525, 166 N. W. 32; *Kuhl v. State, ante,* p. 495, 167 N. W. 743, that in such cases of vital importance to a defendant he is entitled to the deliberate opinion of the court of last resort upon the facts as well as the law, that I am impelled to register this dissent.

KERWIN, J. I concur in the foregoing dissenting opinion of Justice ESCHWEILER.

OWEN, J., took no part.