STATE, Respondent, vs. JOHNSON, Appellant.

*January 11—February 5, 1952.*

For the appellant there was a brief by *Doar & Knowles* of New Richmond, and *E. Nelton* of Balsam Lake, and oral argument by *John Doar, W. T. Doar, Jr.,* and *Warren P. Knowles III*.

For the respondent there was a brief by the *Attorney General* and *William A. Platz,* assistant attorney general, and oral argument by *Mr. Platz*.

MARTIN, J.   The first question presented upon appeal is whether there was ample evidence of identification of the defendant to sustain the jury verdict.

Veloyce Espe made a positive identification of the defendant.   She was asked, "Who was in the car?" and, over objection, answered, "James Johnson."   Again, over objection, she replied that she was sure it was James Johnson.

Counsel contends that Veloyce Espe could not have had the opportunity to so observe her assailant as to identify him.

The assault took place late at night; she was blinded by the lights of the car; she ran from him; she struggled with him. The girl, however, testified that it was a bright moonlight night; that although she was blinded by the lights right after the car stopped beside her, she later turned around and saw him running after her; that while they struggled in the field she had opportunity to observe him.

The argument is made that both girls had equal opportunity to observe the assailant, and yet Janet Thode could not identify him as James Johnson.

Veloyce saw the man twice, and testified that she observed him better when she saw him the second time, after she had run into the field and he caught up with her near the trees. Janet did not have the same opportunity. Moreover, at the time of the second assault, Veloyce heard the assailant's voice again, when he said, "Not dead yet, eh" and "Will you go with me?" Attempts on cross-examination to shake her certainty as to identification failed. Nothing in her testimony indicates that her identification of James Johnson as the assailant was only an opinion based on descriptive facts regarding the appearance of the man who assaulted her. She was not permitted to state the basis for her identification, objection to that question being sustained by the trial court.

So far as Janet's inability to identify the defendant is concerned, the record does not disclose whether his physical characteristics were those of a big, broad build, light hair, and "quite short for a man," but the jury was in a position to observe the defendant and draw its own conclusions.

A piece of peppermint candy had been found at the scene of the second assault upon the Espe girl. Detective Lieutenant McAuliffe of the St. Paul police department testified regarding a statement he took from the defendant when he was apprehended: "He said he had been to a restaurant

at New Richmond. He may have bought some peppermint candy, although he didn't particularly care for it." On the stand defendant denied having peppermint candy with him on May 7, 1949. Veloyce Espe testified that she had no candy in her possession on the night of the assault. It was for the jury to decide whether this evidence connected James Johnson with the crime charged.

Under all the circumstances, it was for the jury to determine whether the testimony introduced by the state was such as to convince it beyond a reasonable doubt of the identity of the defendant.

The next question is whether the evidence was sufficient to establish the offense charged in the information.

Sec. 340.40, Stats., provides:

"Any person being armed with a dangerous weapon, or any firearm, whether loaded or unloaded, who shall assault another with intent to rob or murder, shall, upon conviction thereof, be punished by imprisonment in the state prison not more than thirty years nor less than one year."

Counsel contends that since the information charged the defendant with wilful assault with intent to murder with a dangerous weapon, to wit, a steel-headed hammer, it was incumbent upon the state to prove that the assault was made with a steel-headed hammer. Veloyce Espe testified that she was struck with a "hard object." Her doctor testified that in his opinion the skull fracture she suffered was caused by a blunt instrument. It must have been plain to the jury that whatever instrument was used to inflict such an injury was a dangerous weapon. Whether that weapon was in fact the hammer found at the scene of the assault, or some other object, is immaterial. *Schwantes v. State* (1906), 127 Wis. 160, 106 N. W. 237. It is not necessary, therefore, to consider whether the circumstantial evidence regarding the hammer was sufficient to show that it was used by defendant in making the assault.

The evidence of defendant's intent to murder was ample to support the verdict. The jury could infer such intent from the natural and probable consequences of the assault; a blow sufficient to cause the fracture of Veloyce's skull might easily have caused her death. Moreover, the testimony of the victim that the assailant said "Not dead yet, eh" as he assaulted her the second time indicated an intent to kill.

Defendant contends that the trial court erred in denying a new trial on the ground that the atmosphere of the trial was prejudicial. Affidavits set forth that remarks by a county judge sitting in the audience at the time of trial to the effect that "This fellow will certainly be found guilty. They will show that he is a sex maniac," were made within the hearing of persons for a space of ten or fifteen feet. We do not see that such remarks, if made, influenced the deliberations of the jury, since it is not shown that any jurors did or could have heard them; and it is within the discretion of the trial court to decide whether any such misconduct prejudiced the defendant. *Oborn v. State* (1910), 143 Wis. 249, 126 N. W. 737.

Error is assigned in the trial court's instructions to the jury that "The state for conviction in this case relies upon circumstantial evidence." It is true that the state relied substantially upon the positive identification of one of its witnesses. Such error, however, if it was prejudicial, was prejudicial to the state, not to the defendant.

It is counsel's contention that the trial court entertained a "robust reasonable doubt" as to defendant's guilt and should, therefore, have granted a new trial. In its memorandum opinion the court said:

"It *might* be that if the writer had been sitting on the jury he would have voted for acquittal of the defendant. The writer *might* not have believed some of the witnesses, or *might* not have given the testimony of some of the witnesses

the same credibility that the jury did. However, it seems to us that is not particularly material at this time. The question is not whether the court now believes the testimony of some of the witnesses who testified, but the question this court has to determine is whether there is testimony that the jury believed, and had a right to believe, sufficient on which to base the verdict they returned. . . .

"It is a serious question to pass on the guilt or innocence of a defendant in a close case, and this case is close enough that if the writer was a member of the jury he *might* not have voted guilty." (Emphasis ours.)

We do not believe that the language of the trial court indicates any such robust reasonable doubt as was evidenced in the statements of the trial court in *Kuhl v. State* (1918), 167 Wis. 495, 167 N. W. 743, and which this court held required a new trial. At most, the court said that it *might* have had a reasonable doubt of defendant's guilt, but such observation was immaterial. In *State v. Hanks* (1948), 252 Wis. 414, 416, 31 N. W. (2d) 596, this court said:

". . . the view of the trial court that it, as well as the jury, must be convinced beyond a reasonable doubt of defendant's guilt of the crime charged was error. . . . defendant is entitled to the judgment of the trial court that there was adduced upon the trial evidence which if believed by the jury and rationally considered was sufficient to prove his guilt beyond a reasonable doubt. This is the extent of this right. Defendant has no right to demand that the trial court and every member of this court be affirmatively convinced of his guilt beyond a reasonable doubt."

On July 5, 1950, after verdict and before sentencing, certain proceedings were had at the request of defendant's counsel, under sec. 357.13, Stats., to ascertain defendant's mental condition. We have read the record of those proceedings, but do not feel that a consideration of the testimony there adduced is necessary to a decision of the questions involved on this appeal.

*By the Court.*—Judgment affirmed.