STATE of Wisconsin, Plaintiff-Respondent,

v.

Roger D. PRICE, Defendant-Appellant.†

Court of Appeals

*No. 81–1494–CR.  Submitted on briefs July 22, 1982.—
Decided January 26, 1983.*
(Also reported in 330 N.W.2d 779.)

[14] *State v. Tarrell*, 74 Wis. 2d 647, 653–54, 247 N.W.2d 696, 700–01 (1976).

† Petition to review denied.

For the defendant-appellant the cause was submitted on the briefs of *Steven D. Phillips,* assistant state public defender.

For the plaintiff-respondent the cause was submitted on the brief of *Bronson C. La Follette,* attorney general, and *Jerome S. Schmidt,* assistant attorney general.

Before Gartzke, P.J., Bablitch, J. and Dykman, J.

GARTZKE, P.J.   Defendant appeals from a judgment following a jury trial convicting him of kidnapping, sec. 940.31 (1) (b), Stats., burglary, sec. 943.10 (1) (a), Stats., reckless use of a firearm, sec. 941.20 (1) (c), Stats., and two counts of first-degree sexual assault, sec. 940.225 (1) (b).  The principal issue raised by defendant is whether the trial court should have suppressed his inculpatory statement, on grounds that it was given after defendant invoked and did not validly waive his right to counsel.  The remaining issues are whether the prosecution impermissibly referred to defendant's invoking his right to counsel and whether the trial court should have

submitted second-degree sexual assault to the jury. We resolve the issues adversely to defendant and affirm.

### 1. Motion For Summary Affirmance Denied

As a preliminary matter, we deny the state's motion for summary affirmance. The motion is made because defendant raises issues on appeal he failed to submit to the trial court by postconviction motion. "[F]or issues on appeal to be considered as a matter of right, postconviction motions must be made except in challenges to the sufficiency of the evidence under sec. 974.02(2), [Stats]." *State v. Monje*, 109 Wis. 2d 138, 325 N.W.2d 695, *on reconsideration*, 109 Wis. 2d 153, 153a, 327 N.W. 2d 641, 641 (1982). The *Monje* ruling is inapplicable, however, to appeals from judgments entered before March 1, 1983. *Id.*

### 2. Motion To Suppress Statement

Defendant's motion to suppress was grounded on the claim that his statement was not given voluntarily and that he had not waived his constitutional rights. Following an evidentiary hearing, the trial court denied the motion. Defendant contends that the court should have suppressed his statement because the interrogating officers failed to honor his request to consult with an attorney and because his waiver of the right to have counsel present was invalid.

### A. Trial Court's Ruling

It was established at the evidentiary hearing that about 8:00 p.m. on January 13, 1981, Officers Olson and Stollenwerk, of the Iowa County Sheriff's Department, arrested defendant at the Veterans Hospital in Madison and took him to Dodgeville.[1] During a lineup held about

---

[1] Officer Olson testified. Officer Stollenwerk died before the hearing. Why defendant was in the hospital is not of record. A neurological examination was at least contemplated.

11:00 p.m. the same day, the complainant identified defendant. His interrogation began about 12:38 a.m. in the sheriff's office. Olson first read defendant his *Miranda* rights, which defendant said he understood. When Olson asked if he wished to consult with an attorney, defendant responded that he did. The trial court found that a telephone was available for defendant's use. Defendant did not contact an attorney, but continued to converse with the officers, a conversation which he concedes he initiated.

In that conversation, defendant asked what was likely to happen to him and whether he could obtain medical treatment, complaining of headaches. The officers responded to those questions. Officer Stollenwerk also told defendant that the victim had picked him out in the lineup. When defendant said he needed help, Officer Olson replied, "Roger, if you want help, this is the place to start," by which Olson meant, he testified, that defendant should confess. Defendant said he wanted to get it off his chest.

Stollenwerk then again advised defendant of his *Miranda* rights, reading from a card. When asked if he wished to consult with an attorney, defendant said that he did not. When asked, "Realizing you have these rights, do you wish to answer questions or make a statement now without an attorney present," defendant said that he did. Stollenwerk wrote defendant's responses on the *Miranda* card, and defendant signed it. The time was now 1:00 a.m.

Defendant then gave a lengthy taped statement in question and answer form, excerpts from which were read to the jury. In his statement defendant admitted he entered the complainant's home with a rifle. Although he said he did not remember the actual assault, he recalled being with the complainant in his van later the same day and corroborated other details in her testimony.

The trial court found that defendant gave his statement voluntarily after he had been advised of and understood his constitutional rights. The court said that the only questionable area concerned defendant's telling the officers that he needed help and their telling him that he had been positively identified by the victim and that now was the time for him to obtain help. The court found that defendant may have been motivated to give the statement by his knowledge that he had been identified and by a desire to get the matter off his mind, but, whatever the cause, he had not been coerced or improperly prompted. Having found beyond a reasonable doubt that the statement was given voluntarily, the court denied the motion to suppress.

### B. *Right To Counsel Honored*

The right to have counsel present during interrogation "is indispensable to the protection of the Fifth Amendment privilege" against self-incrimination, which must be scrupulously honored. *Miranda v. Arizona,* 384 U.S. 436, 469, 479 (1966). The "scrupulously honored" standard is flexible. *Wentela v. State,* 95 Wis. 2d 283, 295, 290 N.W.2d 312, 317 (1980) ; *Leach v. State,* 83 Wis. 2d 199, 210, 265 N.W.2d 495, 500 (1978). The *Wentela* court examined the circumstances of an interrogation, deciding as a matter of law whether the police had appropriately honored a request for counsel. 95 Wis. 2d at 295, 290 N.W.2d at 317–18.

Although the trial court found that the officers made a telephone available to defendant after he said he wanted to consult with his attorney, Officer Olson said they did not leave or offer to leave the room or express a willingness to assist defendant to contact an attorney. The record does not show whether defendant knew where an attorney could be reached after midnight. The fact remains, however, that whatever the difficulties in obtain-

ing an attorney, defendant chose to initiate a dialogue with the officers before he consulted with an attorney.

The real question is, therefore, whether defendant validly waived his right to have counsel present, and we proceed to this issue.

## C. *Waiver Valid*

The trial court's decision on the motion to suppress is couched solely in terms of the voluntariness of defendant's statement. Defendant concedes that his statement was voluntary. He rightly points out, however, that a second and separate issue arises when an accused makes admissions without counsel present after invoking the right to counsel. The second issue is whether the accused validly waived his right to counsel. *Edwards v. Arizona,* 451 U.S. 477, 484 (1981).

The *Edwards* court held that if an accused has invoked his right to counsel, he "is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police." 451 U.S. at 484–85. Put another way, "[O]nce a suspect invokes his right to counsel, he may not be subjected to further interrogation until counsel is provided unless the suspect himself initiates dialogue with the authorities." *Wyrick v. Fields,* 74 L. Ed. 2d 214, 217 (1982).[2] When the defendant in *Edwards* in-

---

[2] The court in *Edwards v. Arizona,* 451 U.S. 477 (1981), did not explain the significance it attached to the question who has commenced the conversation. When dissenting in *Wyrick v. Fields,* Justice Marshall said:

When a suspect commences a conversation with a policeman, he has reason to expect that, as in any conversation, there will be a give-and-take extending beyond the subject matter of his original remarks. It may therefore be appropriate to conclude that the

voked his right to counsel, all questioning stopped. Because the police subsequently told him they wanted to talk to him, his incriminating statement was held to be inadmissible for lack of a valid waiver of counsel, even though he had again been advised of his *Miranda* rights. 451 U.S. at 487.

If the accused, rather than the police, initiates conversation after he invoked his right to counsel, the police are not constitutionally prohibited "from merely listening to his voluntary, volunteered statements and using them against him at the trial." *Edwards,* 451 U.S. at 485. If the officers do not merely listen but interrogate the accused, the waiver of the right to counsel is valid if it "was knowing and intelligent and found to be so under the totality of the circumstances, including the necessary fact that the accused, not the police, reopened the dialogue with the authorities." 451 U.S. at 486 n 9.

The facts before us involve the latter situation—a dialogue initiated by defendant during which the officers interrogated him, all after he invoked the right to counsel. We are satisfied that he was interrogated, notwithstanding Officer Olson's insistence at the evidentiary hearing that neither he nor Stollenwerk subsequently "questioned" defendant. An accused may be interrogated without a single question by the police. Interrogation consists of express questioning or its functional equivalent. *Rhode Island v. Innis,* 446 U.S. 291, 300–01 (1980). The functional equivalent of express questioning consists of words or actions by the police which they should know are reasonably likely to elicit an incriminating response from the suspect. 446 U.S. at 301.

Because an objective test is applied to determine whether the police have interrogated an accused, it is imma-

suspect's waiver of his Fifth Amendment rights extends to the entire conversation. . . .

74 L. Ed 2d 214, 221 (1982) (Marshall, J. dissenting).

terial that the trial court failed to find that defendant was or was not interrogated after he invoked his right to counsel. If factual circumstances have been established or are undisputed, the legal significance of those circumstances may be independently determined by an appellate court. *First Nat. Leasing Corp. v. Madison,* 81 Wis. 2d 205, 208, 260 N.W.2d 251, 253 (1977). Whether the undisputed facts show that the officers interrogated defendant is a question of law which we may therefore resolve on appeal.

Officer Olson should have known when he said to defendant, "Roger, if you want help, this is the place to start," that his statement was reasonably likely to elicit an incriminating response.[3] This constituted interrogation. *Innis,* 446 U.S. at 302. Officer Stollenwerk's statement to defendant that the victim had identified him in the lineup may also have constituted interrogation, a point we need not decide.[4]

Defendant having given incriminating admissions in response to police interrogation during a dialogue he

---

[3] That Olson intended that defendant should confess is not dispositive but makes it "unlikely that the practice will not also be one which the police should have known was reasonably likely to have [the] effect" of eliciting an incriminatory response. *Rhode Island v. Innis,* 446 U.S. 291, 301 n. 7 (1980).

[4] The implication was that defendant might as well confess. That result was reached in *Combs v. Wingo,* 465 F.2d 96, 99 (6th Cir. 1972) (reading an incriminating report to accused constituted interrogation because the only possible object was to elicit confession). *Compare Toliver v. Gathright,* 501 F. Supp. 148, 151 (E.D. Va. 1980) (telling accused that an accomplice had implicated him in the crime constituted interrogation). *But see United States v. Thierman,* 678 F.2d 1331, 1334 n. 3 (9th Cir. 1982) (police may advise defendant of evidence or circumstances against him which might contribute to intelligent exercise of his judgment), and *United States v. Pheaster,* 544 F.2d 353, 368 n. 9 (9th Cir. 1976) (presenting defendant with evidence against him not interrogation).

initiated, the issue arises whether he knowingly and intelligently waived his right to have counsel present. *Edwards,* 451 U.S. at 486 n. 9. We therefore turn to the question "whether the purported waiver was knowing and intelligent . . . under the totality of the circumstances, including the necessary fact that the accused, not the police, reopened the dialogue with the authorities." *Edwards,* 451 U.S. at 486 n. 9.

The trial court did not expressly deal with the waiver issue, probably because *Edwards, supra,* was not decided until after the trial. The issue is nevertheless before us on appeal. The *Edwards* decision is undoubtedly retroactive. *State v. Brown,* 317 N.W.2d 714, 715 (Minn. 1982), *cert. filed,* June 19, 1982. The United States Supreme Court has vacated and remanded several cases decided before *Edwards* for further reconsideration in light of *Edwards. Id. United States ex rel. Kimes v. Greer,* 541 F. Supp. 632, 634 (N.D. Ill. 1982), concluded that *Edwards* should be applied retroactively.

That defendant waived his right to have counsel present after invoking the right to counsel is beyond dispute. He signed a *Miranda* card which showed that he wished "to answer questions or make a statement now without an attorney present." He gave the challenged statement after that waiver.

The trial court found that before defendant gave his statement he had been adequately, promptly and completely advised of his constitutional rights, and that he understood his rights. Those findings are not challenged on appeal. Because those findings signify that defendant's waiver was knowingly and intelligently made, the trial court's failure to make express findings to that effect is immaterial.

■

Defendant contends that the officers motivated him to retract his request for counsel. He asserts that the *Mi-*

*randa* protections have little value if interrogating officers may induce suspects to forfeit the rights that they have already asserted. He quotes from *United States v. Crisp*, 435 F.2d 354, 357 (7th Cir. 1970), to the effect that interrogation must cease once the defendant invokes the right to counsel and, "Once the privilege has been asserted, therefore, an interrogator must not be permitted to seek its retraction, total or otherwise." The views of the *Crisp* court are inconsistent with the more recent decisions of the United States Supreme Court. It is now established that officers may interrogate an accused who invoked the right to counsel but subsequently initiates a dialogue with the officers. *Wyrick*, 74 L. Ed. 2d at 218; *Edwards*, 451 U.S. at 486 n. 9. Interrogation includes efforts to induce incriminating responses. *Innis*, 446 U.S. at 301. Consequently, it is immaterial that defendant's waiver of the right to have counsel present when he made an incriminating statement may have been motivated by the officers during the dialogue defendant initiated.

We conclude that the trial court did not err in denying defendant's motion to suppress his incriminating statement.

### 3. *Reference To Request For Counsel*

Before reading excerpts from defendant's statement, the prosecutor questioned Officer Olson about the events preceding defendant's giving the statement. When asked, "What occurred after he was given his rights," Olson responded, "Well, as I was giving him his rights, at that time he indicated he wished to talk to an attorney." Defendant contends that this constituted an impermissible reference to his request for counsel.

The protection from reference to a defendant's silence arises from the fifth amendment guarantee against self-incrimination. *State v. Fencl*, 109 Wis. 2d 224, 236, 325

N.W.2d 703, 710 (1982). Defendant's silence may not be used to impeach his testimony at trial or as part of the prosecution's case-in-chief. *Doyle v. Ohio,* 426 U.S. 610, 619 (1976); *Rudolph v. State,* 78 Wis. 2d 435, 441–42, 254 N.W.2d 471, 474 (1977).

Assuming that for the same reasons it is impermissible to refer to a defendant's request for counsel, here the defendant immediately began a dialogue with the police and validly waived his rights and voluntarily gave the statement twenty-two minutes later. No authority is cited that reference to a request for counsel is improper under these circumstances. It makes no sense to prohibit reference to the invocation of a constitutional right which was given up minutes later. We hold that the claimed error did not occur.

If error occurred, however, it was harmless beyond a reasonable doubt. A constitutional error is harmless if no reasonable possibility exists that the error might have contributed to the conviction. We consider the following factors in determining whether a constitutional error was harmless beyond a reasonable doubt: (1) the frequency of the error; (2) the nature of the state's evidence; and (3) the nature of the defense. *Fencl,* 109 Wis. 2d at 238, 325 N.W.2d at 711. Considering the other overwhelming evidence against defendant, no reasonable possibility exists that the single reference to defendant's requesting an attorney could have contributed to his conviction. *Compare Fencl* (six brief and isolated references to defendant's silence constituted harmless error).

4. *Lesser Included Offense*

We reject defendant's contention that the trial court erred because it instructed the jury on first-degree sex-

ual assault but not, as requested, on second-degree sexual assault.

Each count of first-degree sexual assault in the information alleged that defendant had sexual intercourse with complainant without her consent "by use of a dangerous weapon, to-wit: . . . a knife, contrary to Section 940.225(1) (b), [Stats.]." So far as is material, first-degree sexual assault is "sexual intercourse with another person without consent of that person by use or threat of use of a dangerous weapon or any article used or fashioned in a manner to lead the victim reasonably to believe it to be a dangerous weapon." Sec. 940.225(1) (b). So far as is material, second-degree sexual assault is "sexual intercourse with another person without consent of that person by use or threat of force or violence." Sec. 940.225(2) (a).

Because second-degree sexual assault under sec. 940.-225(2) (a), Stats., does not require proof of a fact in addition to those which must be proved for first-degree sexual assault under sec. 940.225(1) (b), first-degree sexual assault includes second-degree sexual assault under the subsections quoted. Sec. 939.66(1), Stats.

If the evidence, viewed most favorably to the accused, provides a reasonable ground both for acquittal on the greater charge and conviction on the lesser, the trial court should submit the lesser included offense to the jury. *Hawthorne v. State,* 99 Wis. 2d 673, 682–84, 299 N.W.2d 866, 870–71 (1981) ; *State v. Bergenthal,* 47 Wis. 2d 668, 674–76, 178 N.W.2d 16, 20–21 (1970). Whether the trial court should have instructed the jury on a lesser included offense is a question of law. *State v. Williford,* 103 Wis. 2d 98, 112, 307 N.W.2d 277, 283 (1981). We determine questions of law without deference to the trial court. *First Nat. Leasing Corp.,* 81 Wis. 2d at 208, 260 N.W.2d at 253.

Defendant argues that the trial court and this court should examine the evidence *in light of the instructions given to the jury* to determine whether second-degree sexual assault should have been submitted to the jury. The jury was instructed that to find defendant guilty of first-degree sexual assault, it had to find he actually used or threatened to use a dangerous weapon. Defendant points out that the court did not instruct the jury it could also find him guilty of first-degree sexual assault if it found that he used or threatened to use an article used or fashioned in a manner to lead the complainant reasonably to believe it to be a dangerous weapon.[5] Defendant was charged only with using a dangerous weapon. The instructions defined a dangerous weapon as "any device designed as a weapon and capable of producing death or great bodily harm."

Defendant contends that the jury, *as instructed,* could reasonably have decided that he told the truth when he told the complainant he had a knife or that he was merely bluffing and using some nondangerous object. Because the jury, as instructed, could reasonably have found he was bluffing, he asserts that the trial court erred when it refused to give the jury the opportunity of finding he committed the assaults without the use of a dangerous weapon but through the use or threat of force or violence, second-degree sexual assault under sec. 940.225 (2) (a), Stats.

We reject the proposition that the evidence must be examined in light of the proposed instructions, rather than in light of the criminal law, to determine whether the jury should be permitted to find the defendant guilty of a lesser included offense. Defendant's approach would

---

[5] Defendant concedes that had the jury also been instructed that first-degree sexual assault consists of assault with a dangerous weapon or some article used or fashioned in a manner to lead the victim to reasonably believe it to be a dangerous weapon, there would be no basis for submitting second-degree sexual assault.

require a trial court to submit a lesser included offense, not because of the facts or the law, but in spite of the facts and the law and perhaps because the court erred in its jury instructions. Error could create error, and the criminal law of this state would be ignored. Defendants could be convicted on lesser included offenses when the facts and the law do not justify acquittal on the greater offense or conviction on the lesser offense. The trial court and this court should look only to the evidence and the criminal law to determine whether a lesser included offense should be or ought to have been submitted.

Considering the evidence most favorable to defendant, no reasonable ground existed for acquittal on the first-degree sexual assault charge and for conviction of second-degree sexual assault. Complainant was the only witness to describe the assaults. Defendant did not testify. The complainant said her assailant forced her to submit to intercourse by threatening her with an object he said was a knife. She said he took it from his boot and put the sharp tip of the object against her chin before the first assault and against her breast during the second assault.[6] During the second assault he asked her if she enjoyed it and said that if she lied he would cut her breast off. Although she never saw the object, she believed it was a knife. She did not know what else would have been that sharp. The complainant was, at the very least, forced to submit to intercourse by the threat of use of an article used or fashioned in a manner which led her to reasonably believe it was a dangerous

[6] The complaint alleged and the complainant testified that two separate acts of vaginal intercourse and one act of fellatio occurred. Defendant contends that the holding of the alleged knife against complainant's breast occurred during the second act of vaginal intercourse, for which he was not charged. The record does not indicate that the one count of vaginal intercourse alleged in the information was the first rather than the second act of vaginal intercourse.

weapon. That describes the crime of first-degree sexual assault and not second-degree sexual assault.

Defendant contends that because the information referred to a knife, whether he used a knife was critical to the state's case. We disagree. A sharply pointed object can be a dangerous weapon. That the information specified a knife as the dangerous weapon used by defendant does not require that the state prove what he used was actually a knife. *See State v. Johnson,* 261 Wis. 77, 83, 51 N.W.2d 491, 494 (1952) (where information charged assault with a dangerous weapon, to-wit, a steel-headed hammer, whether weapon used was in fact some other dangerous weapon is immaterial).

*By the Court.*—Judgment affirmed.