STATE of Wisconsin, Plaintiff-Appellant,

v.

Scott LEE, Defendant-Respondent.†

Court of Appeals

*No. 83–932–CR. Submitted on briefs January 4, 1984.—
Decided May 17, 1984.*

(Also reported in 351 N.W.2d 755.)

† Petition to review granted.

356

For the plaintiff-appellant the cause was submitted on the briefs of *Bronson C. La Follette,* attorney general, and *Thomas J. Balistreri,* assistant attorney general.

For the defendant-respondent the cause was submitted on the brief of *Ruth S. Downs,* assistant state public defender.

Before Gartzke, P.J., Dykman, J., and Gordon Myse, Reserve Judge.

GARTZKE, P.J.   The state appeals from an order suppressing Scott Lee's inculpatory statement.  He is charged with conspiracy to deliver a controlled substance, contrary to secs. 939.31 and 161.41(1)(b), Stats.  The issues are whether the police may constitutionally initiate interrogation of a defendant after he has invoked his right to counsel and whether defendant's stepmother acted for the police when she persuaded him to inculpate himself.  The trial court found that the stepmother had acted on behalf of the state and suppressed the statement because defendant's communication to the officers was therefore initiated by them, invalidating the statement under *Edwards v. Arizona,* 451 U.S. 477 (1981).  We affirm.

Following an evidentiary hearing, the trial court found that defendant was arrested for his involvement in a drug sale September 25, 1982. Deputy Hille talked to him. When defendant was read his *Miranda* rights, he said he did not want to make a statement and questioning stopped. Defendant telephoned an attorney who told him not to talk to the police.

Meanwhile, defendant's stepmother, Charlene Lee, tried to see him but was refused admittance to the jail. She then talked to Deputy Faull on the telephone and tried to negotiate a deal for defendant but Faull, after talking to the district attorney, refused to make an offer. Later that day Mrs. Lee was allowed to talk to defendant in jail outside visiting hours. After she talked to defendant, he changed his mind and asked to see the officers. Hille and Faull took his statement, after again giving defendant *Miranda* warnings. Defendant's lawyer was not present.

The trial court found that Mrs. Lee talked the defendant into initiating communication with the police. The court found that she was allowed to see him outside visiting hours and after she had spoken to Faull and had been given the impression that it would help defendant if he made a statement. The court found that Mrs. Lee had acted on behalf of the state and that the state initiated the defendant's communication with the officers.

The state recognizes that the *Edwards* court said that an accused who has "expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police." 451 U.S. at 484–85. Finding that decision ambiguous, the state relies on post-*Edwards* lower court decisions to support its position that in some circumstances the police may properly initiate communica-

tion about the offense after a defendant has invoked the right to counsel, citing *United States v. Halliday,* 658 F.2d 1103, 1104–05 (6th Cir 1981), *cert denied,* 454 U.S. 1127 (1981), *People v. Denby,* 430 N.E.2d 507, 513 (Ill. App. Ct. 1981), *Davis v. State,* 406 So. 2d 795, 800 (Miss. 1981) (en banc), *appeal dismissed, cert. denied,* 457 U.S. 1113 (1982), and *State v. Boggs,* 634 S.W.2d 447, 453 (Mo. 1982) (en banc).

We find it unnecessary to discuss the post-*Edwards* cases cited by the state. Since those cases, the United States Supreme Court has referred to the *Edwards* rule in unequivocal terms. In *Solem v. Stumes,* —— U.S. ——, 79 L. Ed. 2d 579, 589 (1984), the majority referred to *Edwards'* "per se approach" and said:

> *Edwards* established a bright-line rule to safeguard pre-existing rights, not a new substantive requirement. Before and after *Edwards* a suspect had a right to the presence of a lawyer, and could waive that right. *Edwards* established a new test for when that waiver would be acceptable once the suspect had invoked his right to counsel: the suspect had to initiate subsequent communication.

Noting past confusion as to the proper interpretation of *Edwards,* Justice Powell said in his concurrence, "The Court now states clearly . . . that *Edwards* established a new per se rule . . . ." *Solem,* —— U.S. at ——, 79 L. Ed. 2d at 593.

As we noted in *State v. Price,* 111 Wis. 2d 366, 371 n. 2, 330 N.W.2d 779, 783 (Ct. App. 1983), the *Edwards* court did not explain the significance it attached to who initiated a conversation between the police and defendant. The *Solem* decision explains that significance.

Bright-line and per se rules are announced to create certainty and remove doubt. The impact of the *Edwards*

rule, as explicated by the *Solem* court, cannot be avoided by a factual ambiguity.

We acknowledge that the issue in *Solem* was whether the *Edwards* rule applies retroactively in collateral review of final convictions. The *Solem* court held that the *Edwards* rule is not retroactive in that sense. —— U.S. at ——, 79 L. Ed. 2d at 592. Nevertheless, the *Solem* court's characterizations of the *Edwards* rule as "bright-line" and "per se" are not dicta. The decision of a court of last resort is not dictum even if it is not decisive of the primary issue if it is germane to that issue. *State v. Kruse*, 101 Wis. 2d 387, 392, 305 N.W.2d 85, 88 (1981). The nature of the rule influenced the *Solem* court's ruling on retroactivity because the police could not be "faulted if they did not anticipate [Edward's] per se approach." *Solem*, —— U.S. at ——, 79 L. Ed. 2d at 589. It was therefore germane to the issue before the court.

If we affirm the trial court's finding that defendant's stepmother acted on behalf of the state when she convinced defendant to talk to the police, then we must find that the police initiated defendant's second communication, contrary to *Edwards*.

The question turns on whether the record supports the trial court's finding that defendant's stepmother had been given the impression that it would help defendant if he made a statement. If the officers gave her that impression, then the inference that she acted on behalf of the state is reasonable. A different inference, that she acted solely to benefit her stepson, is equally reasonable. But we must accept a reasonable factual inference drawn by the court if the facts from which it was drawn are established or beyond dispute. *Klein-Dickert Oshkosh v. Frontier Mortgage Corp.*, 93 Wis. 2d 660, 663, 287 N.W.

2d 742, 743 (1980). That we might have drawn a different factual inference cannot affect our decision.

Our review of factual findings on which a suppression order rests follows the usual standard applicable to findings by a trial court, any conflicts in the testimony being resolved in favor of those findings. *Norwood v. State*, 74 Wis. 2d 343, 363–64, 246 N.W.2d 801, 812 (1976), *cert. denied*, 430 U.S. 949 (1977). Accordingly, the factual finding that the stepmother had been given the impression that it would help defendant if he made a statement must be sustained unless "clearly erroneous." Sec. 805.17 (2), Stats.

That finding is not clearly erroneous. Mrs. Lee testified that when she spoke to Deputy Faull a second time, he said that the district attorney would not make any promises, but if defendant would cooperate "they would go easier on him." She said that Faull then made arrangements for her to go into the jail to see her stepson. While she was talking to defendant, Faull called her and said she had ten minutes "to talk Scott into talking . . . ."

Faull's testimony contradicted that of defendant's stepmother in several regards. The trial court, however, chose the stepmother's testimony. We are bound by that choice. *Norwood, supra.*

*By the Court.*—Order affirmed.