**Wesley LADD, Appellant,**

v.

**STATE of Alaska, Appellee.**

**No. 6969.**

Court of Appeals of Alaska.

June 10, 1983.

---

Grant Callow, Asst. Public Defender, and Dana Fabe, Public Defender, Anchorage, for appellant.

W.H. Hawley, Asst. Atty. Gen., Office of Sp. Prosecutions and Appeals, Anchorage, and Norman C. Gorsuch, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., and COATS and SINGLETON, JJ.

## OPINION

SINGLETON, Judge.

Wesley Ladd kidnapped and murdered John F. Rich. He was convicted of kidnapping, former AS 11.15.260, and first degree murder, former AS 11.15.010. His convictions were affirmed on appeal. *Ladd v. State,* 568 P.2d 960 (Alaska 1977), *cert. denied,* 435 U.S. 928, 98 S.Ct. 1498, 55 L.Ed.2d 524 (1978). In its decision, the Alaska Supreme Court rejected Ladd's contention that while he was in custody he was interrogated in violation of his rights guaranteed by the United States Supreme Court in *Miranda v. Arizona,* 384 U.S. 436, 475, 86 S.Ct. 1602, 1628, 16 L.Ed.2d 694 (1966). The court concluded that Ladd had waived his *Miranda* rights. In reaching its conclusion, the supreme court recognized that Ladd had invoked his right to counsel and that the police had continued to interrogate him. Nevertheless, the supreme court concluded that, in light of the totality of the circumstances, it was satisfied that the state had met its heavy burden of establishing a knowing, intelligent and voluntary waiver by Ladd of his *Miranda* rights. In reaching this conclusion, the supreme court conceded:

> We recognize that courts are not in agreement as to whether a defendant validly waives his *Miranda* rights where he asks to see an attorney but when faced with incriminating evidence or renewed interrogation by the police makes a confession.
>
> California takes the position that a confession elicited in any manner by the police, no matter how gentle the inquiry, is inadmissible under *Miranda* after a request has been made to see an attorney. Such a view facilitates the determination of whether police conduct has violated an accused's constitutional rights since only statements obtained from defendants who on their own initiative volunteer to talk to police would be admissible. However, we feel that this position circumscribes too narrowly the permissible scope of interrogation. Therefore we decline to adopt such a broad rule, and will instead carefully scrutinize the particular facts before us. *See Lewis v. State,* 565 P.2d 846 (Alaska 1977).

568 P.2d at 966 n. 8 (citations omitted).

Ladd contends that in *Edwards v. Arizona,* 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981), the United States Supreme Court adopted the "California Rule" holding that, once a person in custody invokes his right to counsel, he may not be interrogated further and that any statements obtained from him unless he initiates contact with the custodial authorities must be suppressed. *See Giacomazzi v. State,* 633 P.2d 218, 221 n. 3 (Alaska 1981). Ladd argues that *Edwards* clearly repudiates the holding in *Ladd* and that it should be given retroactive effect to invalidate his convic-

tion. He therefore instituted proceedings for post-conviction relief in reliance on Criminal Rules 35(c)(1) and (7). The cited rules provide:

Any person who has been convicted of, or sentenced for, a crime and who claims: (1) that the conviction or the sentence was in violation of the constitution of the United States or the constitution or laws of Alaska;

(7) that there has been a significant change in law, whether substantive or procedural, applied in the process leading to applicant's conviction or sentence, when sufficient reasons exist to allow retroactive application of the changed legal standards;

may institute a proceeding under this rule to secure relief.

The trial court denied relief on the sole ground that *Edwards* would not be applied retroactively to convictions that became final prior to its publication. The parties are in agreement that a decision by this court that *Edwards* is retroactive would require remand to the superior court for a hearing to determine whether Ladd was entitled to relief under *Edwards,* a question not reached in the trial court.

Having reviewed the record and the authorities cited by the parties, we have concluded that *Edwards* should not be applied to judgments that were already final at the time it was decided. We reserve decision on the applicability of *Edwards* to cases which were not "final" as we use the term, *i.e.,* those that were pending in the trial court or on direct appeal at the time *Edwards* was decided. *Cf. Giacomazzi v. State,* 633 P.2d at 220–21 (Giacomazzi was convicted in January 1979, *Edwards* was decided May 19, 1981; the Alaska Supreme Court applied the *Edwards* decision to Giacomazzi on direct appeal without discussing retroactivity). We therefore affirm the decision of the trial court.

We begin our discussion with a consideration of the recent United States Supreme Court decision in *United States v. Johnson,* —— U.S. ——, 102 S.Ct. 2579, 73 L.Ed.2d 202 (1982). There, a majority of the court

determined that a prior decision in *Payton v. New York,* 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980), which precluded warrantless arrests of suspects in their own home, would be given limited retroactive application to all cases pending either in the trial courts or on direct review at the time *Payton* was decided. Justices Blackmun, Marshall, Powell and Stevens joined in an opinion expressly reserving the question whether *Payton* should be applied retroactively to cases that had become final prior to its announcement. Justice Brennan concurred indicating that in his view, the court's decision left undisturbed the retroactivity precedents as applied to convictions final at the time of decision. *See Stovall v. Denno,* 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967). Justices White, Burger, Rehnquist and O'Connor dissented expressing the view that any retroactive application of a new constitutional decision is only appropriate where the doctrine's major purpose is to overcome an aspect of the criminal trial that substantially impairs its truthfinding function and so raises serious questions about the accuracy of guilty verdicts in past trials.

In *Stovall v. Denno,* a proceeding of post-conviction relief from a final judgment, the supreme court declined to retroactively apply *United States v. Wade,* 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967), and *Gilbert v. California,* 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967), prior decisions requiring exclusion of identification evidence which was obtained by exhibiting the accused to identifying witnesses in the absence of the accused's counsel. While the court obviously felt that the presence of counsel at lineups was valuable, it concluded that the absence of counsel did not necessarily taint the identification evidence or render jury verdicts based in part upon that evidence necessarily suspect. In reaching its conclusion, the court relied on a three-prong test derived from prior cases:

The criteria guiding resolution of the question implicate (a) the purpose to be served by the new standards, (b) the extent of the reliance by law enforcement

authorities on the old standards, and (c) the effect on the administration of justice of a retroactive application of the new standards.

388 U.S. at 297, 87 S.Ct. at 1970, 18 L.Ed.2d at 1203.

We are satisfied that the purposes justifying the *Edwards* rule are sufficiently similar to the purposes supporting the rule requiring attorneys at lineups that application of the three-prong *Stovall* test leads to a comparable result. First, we note that the *Edwards* rule, like *Miranda,* its predecessor, is a prophylactic rule primarily intended to safeguard a defendant's constitutional rights and not to enhance the accuracy of jury verdicts. Certainly, the *Edwards* rule does to some extent ensure that a defendant's out of court statements will be accurately reported at trial just as the rule discussed in *Stovall* helps to ensure that a witness's out of court identification will be accurately made and accurately reported; however, the *Miranda* and *Edwards* rules, like the *Wade/Gilbert* rule, may require suppression of accurate as well as inaccurate information. *See Johnson v. New Jersey,* 384 U.S. 719, 729–30, 86 S.Ct. 1772, 1778–79, 16 L.Ed.2d 882, 889–91 (1966) (denying retroactivity to *Miranda* ). There is nothing in the record in this case to support an argument that the statements which Ladd seeks to suppress were inaccurate. The Alaska Supreme Court rejected the claim that they were involuntary. *See Ladd v. State,* 568 P.2d at 967. The Alaska rule was not an anomaly but, in fact, reflected the prevailing view among state and federal courts considering the issue at that time. The cases are collected in *White v. Finkbeiner,* 611 F.2d 186, 192 (7th Cir.1979), *vacated and remanded* for reconsideration in light of *Edwards,* 451 U.S. 1013, 101 S.Ct. 3000, 69 L.Ed.2d 385 (1981), *on remand White v. Finkbeiner,* 687 F.2d 885 (7th Cir. 1982). The *White* court did not discuss retroactivity in the decision it reached after remand.

Finally, application of the *Edwards* rule to final judgments would have an adverse effect on the administration of justice because it would call into question all prior decisions by the police and by our trial courts reached in reliance on our supreme court's decision in *Ladd.*

In reaching our conclusion that *Edwards* should not be applied retroactively to judgments final before it was decided, we are aware that a number of courts have applied *Edwards* retroactively. Illustrative is *United States ex rel. Kimes v. Greer,* 527 F.Supp. 307 (N.D.Ill.1981), *aff'd on reconsideration,* 541 F.Supp. 632 (N.D.Ill.1982). Essentially, Judge Bua determined that *Edwards* was simply the application of *Miranda* to a slightly variant fact situation and consequently under settled United States Supreme Court law was entitled to full retroactive application. *Greer* was coincidentally published on June 22, 1982, one day after the United States Supreme Court reached its conclusion in *United States v. Johnson.* Understandably, Judge Bua did not have the benefit of the *Johnson* opinion in reaching his decision. In *Johnson,* the Supreme Court recognized the principle Judge Bua relied upon:

First, when a decision of this Court merely has applied settled precedents to new and different factual situations, no real question has arisen as to whether the later decision should apply retrospectively. In such cases, it has been a foregone conclusion that the rule of the later case applies in earlier cases, because the later decision has not in fact altered that rule in any material way.

—— U.S. at ——, 102 S.Ct. at 2587, 73 L.Ed.2d at 213 (citations omitted). In *Johnson,* the court noted that *Payton* did not simply apply a past precedent and, in fact, dealt with a situation expressly left open on prior occasions. We believe the instant situation to be comparable. While *Miranda* did indicate that once a right to counsel was exercised by the accused "the interrogation must cease until an attorney is present," 384 U.S. at 474, 86 S.Ct. at 1627, 16 L.Ed.2d at 723, the Court went on to recognize that this *Miranda* right could be waived under appropriate circumstances. The significant distinction between *Edwards* and *Miranda*

lies in the Court's treatment of waiver. Thus, while the substantive right not to be interrogated after a request for counsel remained the same from *Miranda* to *Edwards,* the circumstances under which a court could validly find a waiver of that substantive right was substantially changed by the *Edwards* decision.

In this regard we note that Justice Blackmun's opinion in *Johnson* recognized a middle ground between those cases involving the application of settled principles to slightly variant fact situations on the one hand (which would be fully retroactive to pending and final litigation) and those cases which presented a "clear break with the past" on the other (which would not be applied retroactively at all). This places the *Payton* rule in a third category in which the rule in question would be applied retroactively to pending litigation but arguably not to a final judgment. We believe that third category properly includes this case.

In conclusion, we consider the treatment of waiver to be the significant factor differentiating *Edwards* from *Miranda.* We do not find the United States Supreme Court's treatment of waiver in *Edwards* clearly foreshadowed by *Miranda* or any other intervening case.[1] Consequently, we conclude that the *per se* rule adopted in *Edwards* should be applied at the very most only to those cases pending in the trial courts or on direct appeal at the time *Edwards* was decided. *United States v. Johnson,* —— U.S. ——, 102 S.Ct. 2579, 73 L.Ed.2d 202 (1982).

The judgment of the superior court dismissing Ladd's petition for post-conviction relief is AFFIRMED.

---

1. We recognize that there is dicta in Justice White's concurring opinion in *Michigan v. Mosley,* 423 U.S. 96, 109–10, 96 S.Ct. 321, 329, 46 L.Ed.2d 313, 325 (1975), recognizing a *per se* waiver rule. *Mosley* is cited in the *Ladd* opinion, however, and neither the majority opinion nor Justice Rabinowitz' dissenting opinion suggests that *Mosley* requires a *per se* rule. We express no opinion regarding whether *Rhode Island v. Innis,* 446 U.S. 291, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980), or *Fare v. Michael C.,* 442 U.S. 707, 724–25, 99 S.Ct. 2560, 2571–72, 61 L.Ed.2d 197, 211–13 (1979), foreshadowed *Edwards* because, like *Edwards,* they were decided after Ladd's conviction became final.