Charles E. ROSE, Petitioner-Appellee,
v.
Ted ENGLE, Superintendent,
Respondent-Appellant.

No. 83–3051.

United States Court of Appeals,
Sixth Circuit.

Argued June 17, 1983.

Decided Nov. 28, 1983.

Rehearing and Rehearing En Banc
Denied Jan. 26, 1984.

Karen A. Kolmacic, Ohio Atty. Gen., argued, Elizabeth Dean, Asst. Atty. Gen., Columbus, Ohio, for respondent-appellant.

John A. Crist, Eric Barr, argued, Crist, Wall & Ellis, Middletown, Ohio, for petitioner-appellee.

Before MARTIN and WELLFORD, Circuit Judges, and PECK, Senior Circuit Judge.

PER CURIAM.

The principal question presented in this appeal is whether the Supreme Court's decision in *Edwards v. Arizona,* 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981), should be applied retroactively.[1] Because we find that the district court correctly held that *Edwards* should be applied retroactively to this case, we affirm the district court's judgment granting Charles E. Rose's petition for writ of habeas corpus.

I.

On the morning of December 2, 1978, Rose quarreled with his wife, Jewell. The Roses had a history of marital disputes. At approximately 4:00 p.m. that afternoon, Rose purchased a .22 revolver and fifty rounds of ammunition. Rose told the sales

---

1. The Supreme Court has granted certiorari to consider the question of the retroactivity of

*Edwards. Solem v. Stumes,* —— U.S. ——, 103 S.Ct. 3568, 77 L.Ed.2d 1409 (1983).

clerk, "You must think I'm going to shoot someone." Approximately twenty minutes later, a neighbor of the Roses called the Franklin, Ohio police department and reported a shooting incident at the Roses' residence. When police arrived, they found Jewell's body lying in the doorway of the residence. At about the same time, neighbors saw Rose carrying a gun in the alley next to the residence. Rose went to a neighbor's house and made several remarks. One witness testified that Rose said, "Sandy, go check on her. If she's hurt bad, I have a murder rap." Another witness testified that Rose said, "Sandy, you got to hide me. I just shot my wife" and that if Jewell was dead, he would take a murder rap. Two other witnesses testified that Rose said he accidentally shot his wife. Rose was arrested at the neighbor's house where he told the arresting officer that he had shot his wife.

At the police station, Rose, after being advised of his rights under *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), requested an attorney and stated that he did not wish to discuss the incident. The police did not then interrogate Rose. Less than two hours later, Franklin Police Chief George Hamilton, after again advising Rose of his *Miranda* rights, asked him about the shooting. Rose gave two conflicting stories. First, Rose claimed that Jewell had shot herself. Then, in response to Chief Hamilton's statement that two shots had been fired, Rose claimed that he had argued with Jewell and the gun fired during a struggle over the gun. Rose also said that he would tell the truth if allowed to go home.

Rose was indicted on the charge of aggravated murder, Ohio Rev.Code § 2903.01(A), in January, 1979. Rose was tried before a jury in May, 1979. The principal issue at trial was whether Rose intentionally or accidentally shot and killed Jewell. At trial, Rose moved to suppress evidence concerning his statements to Chief Hamilton. The trial court denied the motion. Rose was convicted of the lesser included offense of murder, Ohio Rev.Code § 2903.02(A). Rose was sentenced to imprisonment for a term of fifteen years to life.

Rose appealed his conviction on the ground, among others, that his statements to Chief Hamilton were elicited in violation of his Fifth Amendment rights outlined in *Miranda.* In an opinion relying on *Michigan v. Mosley,* 423 U.S. 96, 96 S.Ct. 321, 46 L.Ed.2d 313 (1975), the state court of appeals rejected Rose's argument and affirmed his conviction. *State v. Rose,* No. 382 (Warren Cty. Ct.App. Aug. 27, 1980). Rose then filed an appeal to the Supreme Court of Ohio. On March 18, 1981, the Supreme Court of Ohio, sua sponte, dismissed Rose's appeal. *State v. Rose,* No. 80–1488 (Ohio March 18, 1981). On May 18, 1981, the United States Supreme Court announced its decision in *Edwards* which held "that once a suspect invokes his right to counsel, he may not be subjected to further interrogation until counsel is provided unless the suspect himself initiates dialogue with the authorities." *Wyrick v. Fields,* —— U.S. ——, 103 S.Ct. 394, 395, 74 L.Ed.2d 214 (1982) (per curiam) (construing *Edwards* ).

On December 10, 1981, Rose filed the instant petition for writ of habeas corpus, pursuant to 28 U.S.C. § 2254. In an opinion and order dated December 29, 1982, the district court granted the petition based on its conclusions that Rose's statements to Hamilton were inadmissible under *Edwards* and *Miranda,* that *Edwards* is to be applied retroactively to this case, and that admission of the statements was not harmless error. The state has appealed on the grounds that *Edwards* should not be applied retroactively to this case and that the admission of evidence of Rose's statements to Chief Hamilton was harmless error. The state has not disputed the applicability of *Edwards* to this case.

## II.

The state presents alternative arguments for the nonretroactive application of *Edwards.* The state argues that because *Edwards* effected a "clear break" from settled precedent by creating an unanticipated per se rule with respect to the waiver of the Fifth Amendment right to counsel during

custodial interrogation, under the principles enunciated in *United States v. Johnson,* 457 U.S. 537, 102 S.Ct. 2579, 73 L.Ed.2d 202 (1982), *Edwards* should be applied prospectively only. The state alternatively argues that if *Edwards* is not a "clear break" with settled precedent, *Johnson* directs that *Edwards* be applied retroactively to cases still pending when *Edwards* was decided. Because the state contends that Rose's case was final when *Edwards* was announced, it concludes that *Edwards* does not apply retroactively to the case.

Rose's argument in response is that *Johnson* is inapplicable to *Edwards* because *Johnson,* by its very terms, is limited to decisions construing the Fourth Amendment. Rose continues that even under the principles outlined in *Johnson, Edwards* should be applied retroactively because *Edwards* does nothing more than reaffirm *Miranda's* holding that "[i]f the individual states that he wants an attorney, the interrogation must cease until an attorney is present." 384 U.S. at 474, 86 S.Ct. at 1627.

The threshold issue to be resolved is whether the principles enunciated in *Johnson* to determine the retroactivity of decisions construing the Fourth Amendment are to be applied to determine the retroactivity of *Edwards.* In *Johnson,* the Supreme Court held that *Payton v. New York,* 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980), in which the Court held that the Fourth Amendment prohibits a warrantless and nonconsensual entry into a suspect's home to make a routine felony arrest, is to be applied retroactively to all convictions not final at the time it was decided. In reaching this holding, the Supreme Court stated that three principles concerning retroactivity had been established: (1) when a Supreme Court decision merely applies settled precedent to new and different factual situations, the decision is applied retroactively; (2) when a Supreme Court

decision establishes a rule of criminal procedure that is a "clear break with the past", the decision is not retroactive; and (3) when a Supreme Court decision rules that a trial court lacked the authority to convict or punish a criminal defendant, the decision is retroactive. The Court held that none of these principles applied because *Payton* besides not affecting the trial court's authority was neither a mere application of settled precedent to new situations nor a "clear break with the past". The Court then adopted a fourth principle that had been proposed by Justice Harlan, *Desist v. United States,* 394 U.S. 244, 258, 89 S.Ct. 1030, 1038, 22 L.Ed.2d 248 (1969) (Harlan, J. dissenting), *viz.,* that where the Court's decision is not controlled by one of the preceding three principles, the holding of the Court will be applied "to all those cases which are still subject to direct review by this Court at the time the 'new' decision is handed down." [2]

We hold that the principles enunciated in *Johnson* may be used to determine the retroactivity of *Edwards.* Although in announcing its decision in *Johnson* the Court stated that "we express no view on the retroactive application of decisions construing any constitutional provision other than the Fourth Amendment", 102 S.Ct. at 2594 (footnote omitted), in reaching that decision the Court relied on a survey of its decisions determining the retroactive application of decisions construing constitutional provisions other than the Fourth Amendment. *E.g., id.* at 2587 (citing *Gosa v. Mayden,* 413 U.S. 665, 672–73, 93 S.Ct. 2926, 2932, 37 L.Ed.2d 873 (1973) (plurality opinion) (no retroactive application of Fifth and Sixth Amendments ruling in *O'Callahan v. Parker,* 395 U.S. 258, 89 S.Ct. 1683, 23 L.Ed.2d 291 (1969)); *id.* (citing *Michigan v. Payne,* 412 U.S. 47, 55–57, 93 S.Ct. 1966, 1970–1971, 36 L.Ed.2d 736 (1973) (no retroactive application of Fifth Amendment ruling in *North*

---

**2.** The Court intimated that a fifth principle is well-settled, *viz.,* that where the purpose of a decision "is to overcome an aspect of the criminal trial that substantially impairs its truth-finding function", the decision should be given complete retroactive effect. *Johnson, supra,* 102 S.Ct. at 2594 n. 21 (citing *Hankerson v.*

*North Carolina,* 432 U.S. 233, 97 S.Ct. 2339, 53 L.Ed.2d 306 (1977); *Ivan V. v. City of New York,* 407 U.S. 203, 92 S.Ct. 1951, 32 L.Ed.2d 659 (1972)). This principle does not appear to be relevant to the issue of the retroactivity of *Edwards.*

*Carolina v. Pearce,* 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969))); *id.* at 2588 (citing *Ashe v. Swenson,* 397 U.S. 436, 437 n. 1, 90 S.Ct. 1189, 1191 n. 1, 25 L.Ed.2d 469 (1970) (retroactive application of Fifth Amendment ruling in *Benton v. Maryland,* 395 U.S. 784, 89 S.Ct. 2056, 232 L.Ed.2d 707 (1969))). Moreover, the principles for determining the retroactivity of decisions construing the Fourth Amendment have regularly been applied in determining the retroactivity of decisions construing the Fifth Amendment. *E.g., Tehan v. United States ex rel. Schott,* 382 U.S. 406, 86 S.Ct. 459, 15 L.Ed.2d 453 (1966) (applying the retroactivity analysis of *Linkletter v. Walker,* 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965)). Finally, we can discern no principled basis for declining to apply the *Johnson* analysis of retroactivity to a decision construing the Fifth Amendment. *Accord Ladd v. State,* 664 P.2d 178 (Alaska App.1983) (applying *Johnson* analysis to issue of retroactivity of *Edwards*).[3]

▮ Applying the principles enunciated in *Johnson* to the issue of the retroactivity of *Edwards,* we hold the state's argument that *Edwards* should be applied prospectively only because it is a "clear break" from settled precedent to be without merit. In *Johnson,* the Court held that a ruling constitutes a "clear break" only if it explicitly overrules a past precedent, disapproves a practice arguably sanctioned by the Court, or overturns a longstanding and widespread practice which a near-unanimous body of lower court authority has expressly approved and which has not been considered by the Court.

▮ *Edwards* did none of these. *Edwards* did not expressly overrule any precedent. After outlining the holdings of *Miranda* and its progeny, the Court in *Edwards* stated, "We reconfirm these views and, to lend them substance, emphasize that it is inconsistent with *Miranda* and its progeny for the authorities, at their instance, to reinterrogate an accused in custody if he has clearly asserted his right to counsel." 451 U.S. at 485, 101 S.Ct. at 1885. *See also Oregon v. Bradshaw,* —— U.S. ——, 103 S.Ct. 2830, 2837 n. 2, 77 L.Ed.2d 405 (1983) (Powell, J., concurring) (arguing that *Edwards* does not alter waiver analysis except as to emphasis of prosecution's burden where critical question is propriety of police communication with suspect); *id.* at 2839. (Marshall, J., dissenting) (referring to safeguards created by *Miranda* and *Edwards*). Nor did *Edwards* disapprove a practice previously sanctioned by the Court. To the extent that the Court had considered the continued interrogation of a suspect who had requested the assistance of counsel, the Court had expressed its disapproval. *See Michigan v. Mosley, supra,* 423 U.S. at 104 n. 10, 96 S.Ct. at 326 n. 10; *Fare v. Michael C.,* 442 U.S. 707, 719, 99 S.Ct. 2560, 2568, 61 L.Ed.2d 197 (1979); *Rhode Island v. Innis,* 446 U.S. 291, 298, 100 S.Ct. 1682, 1688, 64 L.Ed.2d 297 (1980). Finally, *Edwards* did not overturn a long-standing practice that had been approved by a near-unanimous body of lower court authority. Of particular relevance is that *Edwards* did not alter Sixth Circuit law substantially, but rather confirmed the practice of this court. *See Maglio v. Jago,* 580 F.2d 202, 205–06 (6th Cir.1978); *Combs v. Wingo,* 465 F.2d 96, 98–99 (6th Cir.1972).[4] Accordingly, *Edwards* "does not fall into that narrow class of decisions whose nonretroactivity is effectively preordained because they unmistakably signal 'a clear break with the past'...." *Johnson, supra,* 102 S.Ct. at 2589–90 (quoting *Desist v. United States, supra,* 394 U.S. at 248, 89 S.Ct. at 1032).

The state's alternative argument that *Edwards* is inapplicable to this case because *Edwards* applies retroactively only to those cases not yet final when *Edwards* was decided is similarly unavailing because on May 18, 1981, when *Edwards* was decided,

---

**3.** In *Johnson,* the Court took considerable pains to harmonize the principles enunciated therein with previous decisions analyzing retroactivity. *Johnson, supra,* 102 S.Ct. at 2594 n. 21.

**4.** *Accord Nash v. Estelle,* 597 F.2d 513 (5th Cir.) (en banc), *cert. denied,* 444 U.S. 981, 100 S.Ct. 485, 62 L.Ed.2d 409 (1979). *Contra United States v. Rodriguez-Gastelum,* 569 F.2d 482 (9th Cir.) (en banc), *cert. denied,* 436 U.S. 919, 98 S.Ct. 2266, 56 L.Ed.2d 760 (1978).

Rose's case was still pending on direct appeal. As the Supreme Court noted in *Johnson,*

> "By final we mean where the judgment of conviction was rendered, the availability of appeal exhausted, and the time for petition for certiorari had elapsed [or a petition for certiorari finally denied, all] before our decision in *Mapp v. Ohio.*" *Linkletter v. Walker,* 381 U.S. at 622, n. 5. See also *Tehan v. United States ex rel. Schott,* 382 U.S. 406, 409, n. 3 (1966).

102 S.Ct. at 2583 n. 8 (emphasis added; alteration of quotation in original). Rose's appeal was dismissed by the Supreme Court of Ohio on March 18, 1981. Rose had sixty days from that date to file a petition for certiorari. Sup.Ct.R. 20; 28 U.S.C. § 2101 (1976). Because the sixtieth day from March 18, 1981 was a Sunday, May 17, 1981, the period for Rose's filing a petition for certiorari did not elapse until the end of the next day, May 18, 1981. Sup.Ct.R. 29. On May 18, 1981, *Edwards* was decided by the Supreme Court and, accordingly, Rose's case was still pending on direct appeal when *Edwards* was decided.

Because of our finding that Rose's conviction was not final when *Edwards* was decided, we need not decide whether *Edwards* merely applied settled legal principles to a new factual situation, because under the principles enunciated in *Johnson, Edwards* applies retroactively to Rose's case regardless of the resolution of this issue. We do note, however, that the majority of courts that have considered the issue has applied *Edwards* retroactively [5] and that a panel of this court without explicitly addressing the issue has applied *Edwards* retroactively.[6]

■■ The state also contends that admission of evidence of Rose's statements to Chief Hamilton was harmless error. *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). For a court to find that admission of the evidence was harmless error, "the court must be able to declare a belief that it was harmless beyond a reasonable doubt." *Id.* at 24, 87 S.Ct. at 828. Based on our review of the trial record, we cannot declare that the error of admitting evidence of Rose's statements to Chief Hamilton was harmless beyond a reasonable doubt. As the district court correctly found, "[t]he principal issue of the case was whether [Rose] shot his wife purposely or accidentally." App. at 91. There were, apart from Rose, no eyewitnesses to the shooting. The prosecution's case was built on the circumstances of the shooting: the Roses' history of marital disputes; the Roses' marital dispute on the morning of the shooting; Rose's purchase of the gun only a short time before the shooting; Rose's statements to neighbors following the shooting; and Rose's statements to Chief Hamilton. Rose's defense was based principally on Rose's account of the shooting. In this context, Chief Hamilton's testimony concerning Rose's contradictory ver-

---

5. *United States v. Scalf,* 708 F.2d 1540 (10th Cir.1983) (per curiam); *United States ex rel. Kimes v. Greer,* 541 F.Supp. 632 (N.D.Ill.1982), *aff'g on rehearing,* 527 F.Supp. 307 (N.D.Ill. 1981); *People v. Paintman,* 412 Mich. 518, 315 N.W.2d 418, *cert. denied,* 456 U.S. 995, 102 S.Ct. 2280, 73 L.Ed.2d 1292 (1982); *State v. Brown,* 317 N.W.2d 714 (Minn.1982), *cert. denied,* —— U.S. ——, 103 S.Ct. 3570, 77 L.Ed.2d 1411 (1983); *State v. Taylor,* 56 Or.App. 703, 643 P.2d 379 (1982); *State v. Price,* 111 Wis.2d 366, 330 N.W.2d 779 (App.), *appeal denied,* 111 Wis.2d 704, 333 N.W.2d 729 (1983). *Contra State v. Shea,* 421 So.2d 200 (La.1982); *State v. McCloskey,* 90 N.J. 18, 446 A.2d 1201 (1982). *See also Ladd v. State,* 664 P.2d 178 (Alaska App.1983) (declining to decide whether *Edwards* merely application of *Fare v. Michael C.,* *supra,* or *Rhode Island v. Innis, supra,* but holding that *Edwards* is change of law from *Miranda* ).

6. *Clark v. Jago,* 676 F.2d 1099 (6th Cir.1982), *petition for cert. filed,* 51 U.S.L.W. 3443 (U.S. Nov. 19, 1982) (No. 82–857). Several other circuits have applied *Edwards* retroactively without expressly considering the issue. *E.g., United States v. Hinckley,* 672 F.2d 115 (D.C. Cir.1982) (per curiam) (direct appeal); *United States v. Downing,* 665 F.2d 404 (1st Cir.1981) (direct appeal); *Silva v. Estelle,* 672 F.2d 457 (5th Cir.1982) (habeas corpus); *White v. Finkbeiner,* 687 F.2d 885 (7th Cir.1982) (habeas relief), *petition for cert. filed,* 51 U.S.L.W. 3001 (U.S. June 18, 1982) (No. 81–2340).

sions of the shooting may well have affected the jury's decision.[7]

For the foregoing reasons, the judgment of the district court is affirmed.

WELLFORD, Circuit Judge, dissenting.

Apart from the question as to whether *Edwards v. Arizona,* 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981), should be applied retroactively, I am convinced that admission of defendant's statements constituted harmless error under *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). I therefore dissent.

Defendant's contention at trial was that he shot his wife accidentally while unloading his gun. One need not even consider the contested statements to recognize the implausibility of defendant's story. Less than a half hour before his wife's death, defendant purchased the weapon and ammunition with which she was killed, and made a remark which may have been taken to indicate he was thinking about killing someone. He claimed to have loaded the gun in his car when he arrived home. Before shooting his wife, defendant fired a shot through the floorboard of his car. The state argued that the shot in the car was a "test shot"; defendant maintained that the first shot occurred accidentally, while he was loading the gun. To believe defendant's story therefore requires that one believe that, within a short time after purchasing a gun, defendant accidentally fired the gun twice; it further requires that one believe that defendant, shortly after accidentally discharging the gun while loading it, nevertheless unloaded the gun while pointing it at his wife's heart from a distance of four feet. Given this remarkable defense theory, admission of the contested statements here was harmless beyond a reasonable doubt.

Furthermore, the procedural posture of this case seems to support the conclusion that any error here was harmless. Because defendant testified, the district court found that the contested statements would have been admissible for impeachment purposes even if obtained unconstitutionally; defendant did not dispute that conclusion. Despite this conclusion, the district court issued the writ of habeas corpus, noting that the statements, while admissible for impeachment, were not admissible for the truth of the matter asserted. That distinction, however, is of no significance in this case. The contested statements here were intended to be exculpatory: if either had been believed, or if they created a reasonable doubt, defendant could not have been convicted of intentionally killing his wife. Because the statements were supposedly exculpatory, their only possible use was for impeachment; any error in admitting them here was harmless, even if *Edwards* is applicable.

Accordingly, I would reverse the district court's grant of habeas corpus relief.

---

7. In reaching this decision we note the emphasis placed on Rose's statements to Chief Hamilton by the prosecution in closing argument. Trial transcript at 535 37.