Patricia N. WERNERT,
Petitioner-Appellant,

v.

Dorothy ARN, Warden,
Respondent-Appellee.

No. 85–4017.

United States Court of Appeals,
Sixth Circuit.

April 9, 1987.

Mary E. Moran, Robert S. Catz, Cleveland, Ohio, Janice Toran, argued, for petitioner-appellant.

Thomas J. O'Connell, Columbus, Ohio, Beverly Yale, argued, Richard D. Drake, Asst. Attys. Gen., Columbus, Ohio, James D. Bates, Asst. Pros. Atty., Toledo, Ohio, Holly T. Sydlow, Toledo, Ohio, for respondent-appellee.

Before NELSON and RYAN, Circuit Judges, and ENSLEN, District Judge.

DAVID A. NELSON, Circuit Judge.

Patricia Wernert, the petitioner in this habeas corpus proceeding, makes a three-pronged collateral attack upon her conviction for aggravated murder. First, she claims that incriminating statements admitted during trial were improperly obtained after she had expressed a desire to consult with an attorney. Second, she contends that the admission of her husband's confession violated her Sixth Amendment right to confront witnesses against her. Third, she asserts that perjured testimony offered by the prosecution rendered the trial fundamentally unfair. Finding none of these contentions well taken, we shall affirm the district court's denial of the writ.

At 11:00 p.m. on November 26, 1975, police arrived at the home of Mrs. Wernert and her husband to execute a search warrant for a stolen car. The Wernerts were advised of their Miranda rights at that time. Although neither was placed under arrest, both Mr. and Mrs. Wernert voluntarily accompanied the officers to a police station. Prior to questioning Mrs. Wernert at the police station, officers again advised her of her Miranda rights. The rights were read to her from a waiver form, and after each line was read Mrs. Wernert indicated she understood. She was then handed the waiver form, which she read and signed.

After signing the form, Mrs. Wernert made a statement that was recorded on tape. She declared on the tape that she had been advised of her rights when the search warrant was presented at the house and again after she voluntarily accompanied the officers to the police station. Her rights were read to her for a third time as the conversation was being recorded, and Mrs. Wernert stated after the reading of each right that she understood it. She then repeated the waiver and agreed to make a statement regarding the automobile theft.

Mrs. Wernert was "booked" on an automobile theft charge at approximately 2:00 a.m. on November 27, 1975, and was then placed in a jail cell. When she was taken to her cell a matron asked her whether she would like to make a phone call. Mrs. Wernert replied, "No, my husband [who was being detained on another floor] will call the attorney upstairs."

At 6:10 a.m. a detective removed Mrs. Wernert from her cell and again advised her of her rights, indicating that he wanted to question her regarding the November 17 murders of her mother-in-law and grandmother-in-law. The detective followed the same procedure used earlier, reading the waiver form aloud, asking Mrs. Wernert after each sentence whether she understood it, and then having her read and sign the form. A tape recording was made of the questioning that followed, with the detective once again reading Mrs. Wernert her rights and having her state whether she understood them. Once again she agreed to waive her rights. In the ensuing interrogation Mrs. Wernert said that she did not intend for the women to be killed, although her husband and a friend, Richard Arterberry, had talked of "roughing up" the in-laws in a staged robbery to frighten them into moving out of their house.

Telephone call records indicate that after she had been questioned, Mrs. Wernert attempted to reach the telephone number of her family attorney. There is no evidence that anyone was told she was attempting to obtain legal assistance or knew whose number she was calling.

At approximately 10:00 a.m., while the detective was walking Mrs. Wernert

through the hall to a pre-arranged meeting with her husband, the detective told Mrs. Wernert that her story with regard to the murders was inconsistent with a confession made by her husband. As the detective testified, he told her that her husband had confessed that he and Mrs. Wernert had participated with Richard Arterberry in planning the murders of the two women as mercy killings. The detective testified that Mrs. Wernert then admitted that her husband's statement was true and that she had lied earlier. Although the Miranda warnings were not repeated in full immediately before Mrs. Wernert was told of her husband's confession, the detective did tell her that "her rights still remained with her."

At trial Mrs. Wernert denied having said that her husband's confession was truthful, and she testified that although she had heard her husband and Arterberry speak of "roughing up" the two women in a staged robbery in order to scare them into moving out of their house, she had thought they were joking. A common pleas jury evidently did not believe this testimony, and convicted Mrs. Wernert on two counts of aggravated murder. The trial court sentenced her to death. The convictions were affirmed on appeal, but the death sentence was vacated in light of *Lockett v. Ohio*, 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978). The Ohio Supreme Court denied review.

Mrs. Wernert then filed a petition for writ of habeas corpus in the United States District Court for the Northern District of Ohio. That court denied the petition, and this appeal followed.

## I. *Fifth Amendment Claim*

■ Mrs. Wernert claims that her Fifth Amendment rights were violated because she was interrogated, without counsel, after she had expressed a desire to consult with an attorney, and the results of the interrogation were admitted in evidence at trial.

In *Miranda v. Arizona*, 384 U.S. 436, 478–79, 86 S.Ct. 1602, 1630, 16 L.Ed.2d 694 (1966), the Supreme Court held that:

"... when an individual is taken into custody or otherwise deprived of his freedom by the authorities in any significant way and is subjected to questioning, the [Fifth Amendment] privilege against self-incrimination is jeopardized. Procedural safeguards must be employed to protect the privilege, and unless other fully effective means are adopted to notify the person of his right of silence and to assure that the exercise of the rights will be scrupulously honored, the following measures are required. He must be warned prior to any questioning that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires. Opportunity to exercise these rights must be afforded to him throughout the interrogation. After such warnings have been given, and such opportunity afforded him, the individual may knowingly and intelligently waive these rights and agree to answer questions or make a statement. But unless and until such warnings and waiver are demonstrated by the prosecution at trial, no evidence obtained as a result of interrogation can be used against him."

"An accused in custody, 'having expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him,' unless he validly waives his earlier request for the assistance of counsel." *Smith v. Illinois*, 469 U.S. 91, 94–95, 105 S.Ct. 490, 492, 83 L.Ed.2d 488 (1984) (quoting *Edwards v. Arizona*, 451 U.S. 477, 484–85, 101 S.Ct. 1880, 1885, 68 L.Ed.2d 378 (1981)). As the Court held in *Edwards* and reiterated in *Smith*, the *Miranda* rule "embodies two distinct inquiries. First, courts must determine whether the accused actually invoked his right to counsel.... Second, if the accused invoked his right to counsel, courts may admit his responses to further questioning only on finding that he (a) initiated further discussions with the

police, and (b) knowingly and intelligently waived the right he had invoked." 469 U.S. at 95 (citations omitted). "[T]he State need prove waiver only by a preponderance of the evidence." *Colorado v. Connelly,* — U.S. ——, 107 S.Ct. 515, 523, 93 L.Ed.2d 473 (1986).

The petitioner contends that she invoked her right to speak with counsel twice: first when she told the jail matron that she did not wish to call an attorney, that her husband would call one, and second when she attempted to make a phone call to her family attorney. The district court rejected both branches of this contention, and we think it was right to do so.

Prior to the petitioner's statement to the jail matron that her husband would phone an attorney, the petitioner had been read her rights three times and had repeatedly waived her right to speak with counsel. The subsequent statement that her husband would telephone an attorney, like her own unannounced effort to reach an attorney by telephone, did not, in our view, put the authorities on notice that Mrs. Wernert intended to retract her waiver and invoke her right to consult a lawyer. Invocation of the right to counsel, to be effective, must be communicated; and as we read this record, the police were not apprised that Mrs. Wernert had changed her mind and wanted to consult with counsel.

The petitioner also argues that any waiver of her right to counsel was not made intelligently and voluntarily because of earlier ingestion of alcohol and drugs, concern about her child, inexperience with law enforcement procedure, and lack of sleep and sustenance. This argument was properly rejected.

■ Assuming Mrs. Wernert's account of her drug and alcohol ingestion was truthful (and one witness said Mrs. Wernert would have died if it was), expert testimony indicated that the effects of the drugs and alcohol she claimed to have consumed peaked at noon on the day before Mrs. Wernert endorsed her husband's account of the murder. Officers testified that Mrs. Wernert appeared "normal" at all times, even when they first appeared at her home. During the day when she allegedly consumed the drugs and alcohol, Mrs. Wernert was admittedly capable of driving a car and preparing dinner. Although she may well have been concerned over the welfare of her child, she knew that he was being cared for in a children's home, the police having told her of these arrangements before she was placed in a cell for what was left of the night. Lack of sustenance could not have been too serious an impairment, Mrs. Wernert having testified that she had eaten dinner the night before her statements were made. The alleged lack of experience with law enforcement procedure is unavailing in view of the repeated painstaking enumeration of her rights. The evidence simply does not indicate that Mrs. Wernert lacked the ability to make a voluntary and intelligent waiver of her rights.

## II. *Admission of Out-of-Court Statements*

■ Mrs. Wernert challenges the admission of the testimony that she endorsed Mr. Wernert's alleged confession. Because her husband was not a witness, Mrs. Wernert contends, she was deprived of the right to cross-examine him regarding the supposed confession.

*Poole v. Perini,* 659 F.2d 730 (6th Cir. 1981), *cert. denied,* 455 U.S. 910, 102 S.Ct. 1259, 71 L.Ed.2d 450 (1982), is dispositive of this claim. In *Poole,* as here, an officer testified that when confronted with the confession of another implicating the defendant, the defendant admitted that the confession was truthful. In *Poole,* as here, the testimony of the officer was admitted under Ohio Rule of Evidence 801(D)(2)(b), which provides that an out-of-court statement is not hearsay if the party against whom it is used has manifested a belief in its truth. In *Poole,* as here, the defendant denied having admitted that the statement was truthful, but this court rejected the defendant's claim that introduction of evidence of the admission violated his right of confrontation.

As was noted in *Poole,* "The right to confront the witnesses against one is not

violated every time hearsay evidence is admitted without an opportunity to cross-examine the declarant.... The Court must examine whether the hearsay statement has any special indicia of reliability which would justify an exception to the requirement of cross-examination." *Id.* at 733 (citations omitted). "An adoptive confession," the court continued, "avoids the confrontation problem because the words of the hearsay become the words of the defendant. If the defendant accepts the out-of-court statement as his own, cross-examination of the declarant ... becomes unnecessary and irrelevant." *Id.*

We hold, consistently with this court's decision in *Poole,* that the defendant's right of confrontation was not violated by admission of evidence of another's out-of-court declaration allegedly admitted by the defendant to be the truth.

Attempting to distinguish *Poole,* Mrs. Wernert argues that her agreement with the out-of-court declaration was unreliable because she was "coerced" into it as a result of her marital relationship with the declarant. The relationship is irrelevant, in our view; Mrs. Wernert has never alleged that she endorsed her husband's statement out of fear that she would do her husband harm by contradicting him. On the contrary, she has consistently denied ever having said that her husband's statement was correct. We see no meaningful difference between this case and *Poole.*

III. *Perjured Testimony*

■ Mrs. Wernert's final claim is that perjured testimony of a Toledo police officer rendered her trial fundamentally unfair. Sergeant Richard Zielinski falsely testified that he had received a bachelor's degree in pharmacy from the University of Toledo and that he possessed other scientific credentials he did not in fact have. He further testified that he had conducted specific laboratory tests on a hammer that was found lying on a workbench separate from all other tools in the home of the victims. He opined, based on those tests, that there was either human or animal blood on the hammer. Because the coroner testified that the victims were killed by blows to the head, and that a hammer could have been used in the case of one victim, there was an implication that this particular hammer was the murder weapon.

One element necessary to an aggravated murder conviction is that the murder be caused "purposely." Ohio Rev.Code Ann. § 2903.01 (Anderson 1982). The petitioner contends that because the type of weapon used is material to a determination of whether a murder was committed purposely, Sergeant Zielinski's perjured testimony may have influenced the jury in finding purposefulness.

In *United States v. Agurs,* 427 U.S. 97, 103, 96 S.Ct. 2392, 2397, 49 L.Ed.2d 342 (1976), the Supreme Court reiterated its position that "[A] conviction obtained by the knowing use of perjured testimony is fundamentally unfair, and must be set aside if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury." We hold that there is no reasonable likelihood that the false testimony of Sergeant Zielinski could have influenced the jury's verdict here; the use of such testimony thus would not require us to set the conviction aside even if its perjurious character had been known to the prosecutor, which it was not.

Whether the hammer found in the victims' basement was or was not the murder weapon is irrelevant to a finding of purposefulness here. The coroner's description of the wounds in question leaves no doubt that they were inflicted with a purpose to kill. The coroner testified that the victim died of "multiple blows" to the skull, and that the blows "actually pulverized the skull in the area with depression into the brain substance itself." He also opined that the velocity of the blows was "significant" and that the weapon was of "significant weight." The person who wielded the weapon could hardly be thought to have been acting absent-mindedly.

Even more important, however, is the fact that Mrs. Wernert herself was not claimed to have wielded the weapon. The prosecution's theory, supported by the evidence, is that Mr. and Mrs. Wernert merely

planned the murders, and that a friend, Richard Arterberry, actually inflicted the injuries while the Wernerts were establishing a pre-arranged alibi. Whether Arterberry acted purposely had no bearing on whether Mrs. Wernert did.

The judgment of the district court is AFFIRMED.

ENSLEN, District Judge, dissenting.

Although I agree with most of Judge Nelson's opinion, I must dissent from his treatment of appellant's *Edwards* claim. The majority bases its rejection of this claim on two factors. First, plaintiff was read her *Miranda* rights three times before she was arrested and booked at the stationhouse, and on each occasion she waived those rights and spoke to the police about the auto theft. Second, appellant, according to the majority, never "put the authorities on notice that [she] intended to retract her waiver and invoke her right to consult a lawyer." *Supra*, maj. op. p. 616. The Magistrate in his Report and Recommendation similarly rejected appellant's claim that she had invoked her right to counsel. The District Court did not expressly address the *Edwards* issue. Because I believe that appellant did adequately inform the authorities of her desire to consult with counsel, I must dissent from the majority's treatment of this issue.

In *Miranda v. Arizona*, the Supreme Court stated that if an accused person "indicates in any manner and at any stage of the process that he wishes to consult with an attorney before speaking there can be no questioning." *Miranda v. Arizona*, 384 U.S. 436, 444–45, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694 (1966); *see also id.* at 474, 86 S.Ct. at 1628 ("If the individual states that he wants an attorney, the interrogation must cease until an attorney is present"). The Supreme Court strengthened this rule in *Edwards v. Arizona*, holding explicitly that "an accused ... having expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communi-

cation, exchanges, or conversations with the police." *Edwards v. Arizona*, 451 U.S. 477, 484–85, 101 S.Ct. 1880, 1885, 68 L.Ed.2d 378 (1981). The Supreme Court further held in *Edwards* that "when an accused has invoked his right to have counsel present during custodial interrogation, a valid waiver of that right cannot be established by showing only that he responded to further police-initiated custodial interrogation even if he has been advised of his rights." *Id.* at 484, 101 S.Ct. at 1885.

Appellant cannot directly claim the benefit of the *Edwards* decision because it does not apply to cases that were pending on habeas appeal when it was issued. *Solem v. Stumes*, 465 U.S. 638, 650, 104 S.Ct. 1338, 1345, 79 L.Ed.2d 579 (1984); *compare Shea v. Louisiana*, 470 U.S. 51, 105 S.Ct. 1065, 84 L.Ed.2d 38 (1985) (holding that *Edwards* does apply to cases that were pending on direct appeal in a state court at the time it was decided). She can, however, claim the benefit of directly applicable precedent from this circuit that predates *Edwards*. *See Maglio v. Jago*, 580 F.2d 202, 205 (6th Cir.1978) (indicating that there may be a *per se* rule "barring custodial interrogation of a suspect after a request for counsel has been made"); *Brooks v. Perini*, 384 F.Supp. 1011, 1017–18 (N.D. Ohio 1973), *aff'd*, 497 F.2d 923 (6th Cir. 1974); *see also Rose v. Engle*, 722 F.2d 1277, 1280 (6th Cir.1983) (noting that "*Edwards* did not alter Sixth Circuit law substantially, but rather confirmed the practice of this court") (citing *Maglio* and *Combs v. Wingo*, 465 F.2d 96, 98–99 (6th Cir.1972)), *motion for stay granted sub nom., Tate v. Rose*, 466 U.S. 1301, 104 S.Ct. 2186, 80 L.Ed.2d 805 (1984), *motion to vacate stay denied*, 467 U.S. 1249, 104 S.Ct. 3529, 82 L.Ed.2d 835 (1984), *cert. denied*, 470 U.S. 1003, 105 S.Ct. 1353, 84 L.Ed.2d 376 (1985). In this case, appellant did not initiate further "communication, exchanges, or conversations with the police" after she had been formally arrested and booked, and the only question is whether she adequately "expressed [her] desire to deal with the police only through counsel." *Edwards*, 451 U.S. at 484–85, 101 S.Ct. at 1885.

On this point, I must disagree with the majority. I agree that appellant's attempt to contact her family attorney after the 6:10 a.m. interview did not constitute an invocation of her right to counsel. I believe, however, that appellant did adequately invoke this right when in response to the jail matron's query about using the telephone after she had been arrested and booked, she stated "No, my husband will call the attorney upstairs." This statement constituted an unequivocal assertion of appellant's desire to seek assistance of counsel. *See McCree v. Housewright,* 689 F.2d 797, 799–801 (8th Cir.1982); *White v. Finkbeiner,* 611 F.2d 186, 189–90 (7th Cir.1979), *vacated on other grounds,* 451 U.S. 1013, 101 S.Ct. 3000, 69 L.Ed.2d 385 (1981), *on remand,* 687 F.2d 885 (7th Cir.1982); *Maglio,* 580 F.2d at 203–05. At a minimum, appellant's statement should have alerted the authorities and caused them to conduct further inquiry into the matter. *See Smith v. Illinois,* 469 U.S. 91, 96 n. 3, 105 S.Ct. 490, 493 n. 3, 83 L.Ed.2d 488 (1984) (noting cases where courts have held that when an accused indicates he may desire counsel, "all interrogation must immediately cease except for narrow questions designed to 'clarify' the earlier statement and the accused's desires respecting counsel").

Finally, my reading of the record is that the police were aware of appellant's belief that her husband would call an attorney. Detective Stiles testified at the state court suppression hearing that he was present when the Matron asked appellant if she would like to call her attorney. Although this point is not clear from the record, presumably if Detective Stiles heard the Matron's question, then he also heard appellant's reply. At that point, he at least should have inquired further into appellant's desire to have counsel present. His failure to do so and to respect appellant's expression of her desire to seek the assistance of counsel rendered his subsequent questioning of her invalid.

For the above reasons, I respectfully must disagree with the majority's decision to affirm the district court's decision.