972 F.2d 349
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Dale Conrad McQUISTON, Defendant-Appellant.
 No. 91-6048.
 United States Court of Appeals, Sixth Circuit.
 Aug. 4, 1992.
 
 Before DAVID A. NELSON and ALAN E. NORRIS, Circuit Judges, and JOINER, Senior District Judge.*
 PER CURIAM.
 
 
 1
 This is a criminal case in which the defendant, Dale Conrad McQuiston, was convicted of bank robbery (18 U.S.C. § 2113(a) and (d)), using a firearm during and in relation to a crime of violence (18 U.S.C. § 924(c)), and three counts of being a felon in possession of a firearm (18 U.S.C. § 922(g)). Sentenced to imprisonment for 387 months, Mr. McQuiston has appealed both his conviction and his sentence.
 
 
 2
 We shall affirm the conviction. As to the sentence, the most significant issue raised by Mr. McQuiston concerns a 60-month enhancement under the Armed Career Criminal Act, 18 U.S.C. § 924(e). The same type of issue is presented in Case No. 91-1350, United States v. Brady, which the court recently voted to rehear en banc. Because Brady is likely to be controlling here, we shall hold the § 924(e) question in abeyance pending a final decision in Brady.
 
 
 3
 * Mr. McQuiston was arrested on November 29, 1988, for public drunkenness. As he was being driven to the county jail with his wife and infant child, he pulled a gun that had escaped detection during the arresting deputy's pat-down search. After firing two shots, McQuiston took the deputy's gun, forced him out of the patrol car, and fled in the stolen car. He was found and arrested again the next day.
 
 
 4
 After being read his Miranda rights, Mr. McQuiston agreed to give a written statement. He composed the statement himself, writing it down outside the presence of the sheriff. The last paragraph included this sentence: "The sheriff has just read me my rights and that I can call a lawyer now." McQuiston signed the statement with the pseudonym "John Herring."
 
 
 5
 The sheriff testified at a suppression hearing that Mr. McQuiston never asked to speak to a lawyer. McQuiston did not contradict the sheriff's testimony, but told the district court that he had amnesia and did not remember whether he had asked for counsel. The court found that the written statement was an acknowledgment of the right to a lawyer, not a request for one.
 
 
 6
 Later in the day on which he was rearrested, a deputy sheriff recognized Mr. McQuiston as the subject of an FBI photograph of a bank robbery suspect. The sheriff notified FBI Agent Darragh, who came to the county jail to question Mr. McQuiston about the bank robbery. Unaware of the written statement taken by the sheriff, Agent Darragh administered fresh Miranda warnings and obtained a written waiver of rights. McQuiston used his real name in signing the waiver. Agent Darragh took an oral statement in which McQuiston implicated himself in the bank robbery charged in the case at bar.
 
 
 7
 A couple of days later, McQuiston attempted to escape during another interrogation; the attempt was unsuccessful. Agent Darragh returned the next day, administered fresh warnings, and obtained yet another written waiver of rights. McQuiston then confessed to a total of eleven bank robberies, including the one for which he was tried in this case.
 
 
 8
 In mid-December of 1989, seven days after he had given his final statement to Agent Darragh, Mr. McQuiston was indicted on one count of bank robbery. The government obtained the indictment before its investigation was complete; the FBI was concerned about the security of the county jail and wanted to proceed quickly. McQuiston pleaded guilty, but then moved for a psychiatric evaluation. The district court permitted him to withdraw the plea when, after two examinations, doctors at a Bureau of Prisons hospital indicated that he had been incompetent to plead. After further medical examination, the district court determined that Mr. McQuiston was competent to stand trial.
 
 
 9
 By the time the competency hearing was scheduled, a different Assistant United States Attorney had taken over responsibility for prosecuting the case. After reviewing the completed FBI investigation and the psychiatric reports, and after inquiring further into Mr. McQuiston's criminal history, the new prosecutor decided that additional charges should be brought. The prosecutor so advised McQuiston's attorney and then waited to see whether the outcome of the competency hearing or a new plea agreement would obviate the need to seek a new indictment. In January of 1991, after McQuiston had been found competent to stand trial and had indicated his intention to do so, a superseding five-count indictment was handed up. The new indictment added the § 924(c) count and three § 922(g) counts to the original bank robbery count. Mr. McQuiston moved to dismiss the superseding indictment as vindictive. The district court denied the motion.
 
 
 10
 The evidence presented by the government at trial included photographs of Mr. McQuiston taken by bank surveillance cameras during the robbery, the testimony of the bank tellers, and the confession Mr. McQuiston gave to Agent Darragh. Mr. McQuiston presented an insanity defense, testifying that he had no recollection of the events in question. The testimony of the prison psychiatrists who had evaluated Mr. McQuiston indicated that he had been faking or exaggerating his mental illness from the beginning. The jury found Mr. McQuiston guilty on all five counts.
 
 
 11
 Having provided notice before the trial of its intent to do so, the government moved at sentencing for enhancement of the sentence under the Armed Career Criminal Act, 18 U.S.C. § 924(e). Mr. McQuiston opposed the motion, contending that two of the three asserted predicate offenses--an escape from custody and a kidnapping--should be treated as a single criminal episode for the purposes of the Act.
 
 
 12
 The two offenses took place in 1969, after a Virginia state police officer had arrested Mr. McQuiston and brought him before a magistrate for booking. Mr. McQuiston pulled a gun, and the arresting police officer and the magistrate were shot in the ensuing altercation. Mr. McQuiston ran 150 to 200 yards to a nearby home. There, within thirty minutes of the shooting, he abducted a 15-year-old girl and fled in a stolen car. The girl was released several hours later, after McQuiston had wrecked the car in another state. He was arrested the next day. Concluding that the initial escape from the state trooper and the subsequent abduction were two distinct offenses, the district court held the Armed Career Criminal Act applicable.
 
 
 13
 Using the October 1987 edition of the Sentencing Guidelines, the court determined that the guideline sentencing range was imprisonment for 121-151 months. Because this was below the statutory minimum of 180 months, see 18 U.S.C. § 924(e), the court used that minimum as its base. The government moved for an upward departure on the ground that Mr. McQuiston's criminal history category of IV did not adequately reflect the seriousness of his criminal history. The district court agreed, noting that the defendant's past crimes included shooting law enforcement officers and abducting innocent citizens. The court also noted that he had confessed to many other uncharged bank robberies and had made several escape attempts that were not reflected in the criminal history score. Finally, the district court found that Mr. McQuiston was likely to return to crime upon release from jail. Departing upward from the guideline range, the court imposed a sentence of 327 months for the bank robbery count and for each of the three § 922(g) counts, to be served concurrently. A consecutive sentence of 60 months was imposed under the Armed Career Criminal Act.
 
 II
 
 14
 Mr. McQuiston contends that the district court erred by denying his motion to suppress the statements given to Agent Darragh. Although he testified at the suppression hearing that he did not remember whether he had requested counsel, McQuiston argues that the last paragraph of his written statement constituted a request for counsel.
 
 
 15
 Once a suspect has expressed a desire for counsel during a custodial interrogation, police may not continue the interrogation until counsel has been made available unless the suspect himself initiates further communication with the police and knowingly and intelligently waives the rights he has previously invoked. Edwards v. Arizona, 451 U.S. 477 (1981). This rule applies to subsequent interrogation about an offense unrelated to the initial interrogation. Arizona v. Roberson, 486 U.S. 675 (1988).
 
 
 16
 "Invocation of the right to counsel, to be effective, must be communicated...." Wernert v. Arn, 819 F.2d 613, 616 (6th Cir.1987), cert. denied, 484 U.S. 1011 (1988). See also McNeil v. Wisconsin, 115 L.Ed.2d 158, 169 (1991) (Edwards requires, at a minimum, an expression of a desire for assistance of counsel). As in Wernert, the district court determined here that the police were not told that the suspect wanted to consult counsel. The sheriff testified that McQuiston did not ask for a lawyer, and this testimony was uncontradicted. The court found that the last paragraph of McQuiston's written statement merely acknowledged that he had been advised of the right to a lawyer; the acknowledgment did not constitute a request for a lawyer, in the district court's view.
 
 
 17
 Mr. McQuiston concedes that the district court's finding is a permissible interpretation of the written statement, but he contends that it is not the only reasonable one. In reviewing a district court's non-guilt findings of fact, we apply a "clearly erroneous" standard. Maine v. Taylor, 477 U.S. 131 (1986). Where the finding represents one of several permissible interpretations of the evidence, and where the finding is supported by uncontradicted testimony, we cannot say that the district court's finding is clearly erroneous.
 
 
 18
 Mr. McQuiston's reliance on Maglio v. Jago, 580 F.2d 202 (6th Cir.1978), is misplaced. In Maglio, the defendant successfully communicated his desire to have an attorney present during questioning and never validly retracted that request before finally relenting to an interrogator's persistent questioning. Mr. McQuiston, by contrast, never successfully communicated a desire to have counsel present, and he validly waived his rights.
 
 
 19
 * * *
 
 
 20
 Mr. McQuiston contends next that the district court erred by denying his motion to dismiss the superseding indictment as vindictive. The district court found that McQuiston had engaged in plea bargaining and that the give-and-take process of plea bargaining was not vindictive. United States v. Goodwin, 457 U.S. 368 (1982); Bordenkircher v. Hayes, 434 U.S. 357 (1978). The superseding indictment was sought by a different prosecutor after further investigation had revealed the gravity of Mr. McQuiston's past criminal behavior and his potential for violence. His attorney was told of the government's intention before McQuiston decided whether to go to trial. The government's offer of a plea bargain was rejected, and the superseding indictment followed. It is not improper for a prosecutor to file additional well-founded charges if the prosecutor's initial expectation that a defendant will plead guilty to lesser charges turns out to be wrong. Goodwin, 457 U.S. at 380. The finding in the present case that the superseding indictment was not the result of prosecutorial vindictiveness is not clearly erroneous.
 
 
 21
 Mr. McQuiston's remaining arguments of prosecutorial misconduct were waived through failure to object at trial.
 
 III
 
 22
 Mr. McQuiston challenges his sentence on the grounds that the district court (1) miscalculated the sentencing range, (2) erred in holding the Armed Career Criminal Act applicable, and (3) erred in departing upward.
 
 
 23
 * The crimes of which Mr. McQuiston was convicted occurred in August of 1988, and he was not sentenced until August of 1990. The district court applied the version of the guidelines that was in effect when the crimes were committed, rather than the version in effect at the time of sentencing, because the earlier version yielded a lower sentencing range. Although courts generally must apply the version of the guidelines in effect at the time of sentencing, 18 U.S.C. § 3553(a)(4), ex post facto concerns may preclude use of that version when it yields a sentencing range higher than the version in effect at the time of the crime. Miller v. Florida, 482 U.S. 423 (1987); United States v. Nagi, 947 F.2d 211, 213 n. 1 (6th Cir.1991). But see United States v. Bader, 956 F.2d 708 (7th Cir.1992) (a change in the sentencing guidelines "may increase the time a criminal spends in prison without transgressing the ban on ex post facto laws"); United States v. Wilson, 962 F.2d 621 (7th Cir.1992).
 
 
 24
 The guidelines in effect at the time of McQuiston's sentencing, unlike the version in effect at the time his crimes were committed, included a substantial enhancement for violations of the Armed Career Criminal Act. U.S.S.G. § 4B1.4 (1989). On the other hand, the earlier version of U.S.S.G. § 2B3.1, as applied to this case, called for a one-level increase in the offense level by reason of the loss that resulted from McQuiston's stealing the arresting deputy sheriff's patrol car and pistol. The version of § 2B3.1 that became effective in 1989 does not provide the one-level enhancement for such losses. McQuiston now argues for the first time that the district court should have used the 1989 version of § 2B3.1 and the 1987 version of the rest of the guidelines.
 
 
 25
 We do not normally consider on appeal issues that were not raised in the district court--and Mr. McQuiston would not prevail on this point even if there were some reason for us to depart from the norm here. The Sentencing Guidelines are not merely a series of isolated provisions; they create a comprehensive sentencing scheme. Courts are not required to mix and match different guideline sections, always using the version most beneficial to the defendant.[1]
 
 B
 
 26
 McQuiston contends that the district court erred in applying the Armed Career Criminal Act, 18 U.S.C. § 924(e), which provides in pertinent part as follows:
 
 
 27
 "In the case of a person who violates section 922(g) of this title and has three previous convictions ... for a violent felony ... committed on occasions different from one another, such person shall be ... imprisoned not less than fifteen years."
 
 
 28
 In finding three predicate felonies, the district court counted as two separate offenses McQuiston's 1969 escape from the Virginia state trooper and the subsequent kidnapping. McQuiston contends that these offenses were too closely linked to constitute crimes "committed on occasions different form one another."
 
 
 29
 We recently decided to rehear en banc a case the result in which is likely to be controlling here. United States v. Brady, 960 F.2d 35 (6th Cir.1992) (vacated). In Brady the defendant was convicted of violating 18 U.S.C. § 922(g), and the district court imposed an enhanced penalty pursuant to 18 U.S.C. § 924(e). The question that will be considered by the en banc court is whether two of the asserted predicate offenses--similar armed robberies committed at different locations within thirty minutes of each other--should be treated as a single offense for purposes of § 924(e). If the offenses in Brady are determined to have been "committed on occasions different from one another" within the meaning of that phrase as used in 18 U.S.C. § 924(e), we think that the corresponding determination in the instant case would have to be upheld. If the offenses in Brady are determined not to have been committed on different occasions, however, we would be hard put to uphold the district court's determination here. Accordingly, and because it does not appear that Mr. McQuiston will be prejudiced by the delay, we shall defer judgment on the § 924(e) issue pending the decision of the en banc court in Brady. There is no reason for us to postpone resolution of the upward departure issue. Mr. McQuiston's record is such that it was clearly within the province of the district court to depart from the guideline range in the way it did.
 
 
 30
 The conviction is AFFIRMED, the district court's calculation of the guideline sentencing range and the upward departure are AFFIRMED, and disposition of the remaining sentencing issue is DEFERRED.
 
 
 31
 CHARLES W. JOINER, District Judge, concurring.
 
 
 32
 I concur fully in the opinion of the court but write simply to alert the parties to Fed.R.App. 29, regarding application to file briefs amicus curiae in United States v. Brady, No. 91-1350, which is currently pending before this court en banc.
 
 
 
 *
 The Honorable Charles Joiner, United States District Court for the Eastern District of Michigan sitting by designation
 
 
 [1]
 Our conclusion is strengthened by the proposed amendments to the Guidelines Manual transmitted to Congress by the Sentencing Commission on April 30, 1992. Under Amendment No. 5, the policy statement accompanying U.S.S.G. § 1B1.11 would say, in relevant part, that:
 "The Guidelines Manual in effect on a particular date shall be applied in its entirety. The court shall not apply, for example, one guideline section from one edition of the Guidelines Manual and another guideline section from a different edition of the Guidelines Manual."