NOT RECOMMENDED FOR FULL-TEXT PUBLICATION

File Name: 14a0519n.06

Case No. 12-6516

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Jul 15, 2014
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE WESTERN |
| MARIO HAMPTON, | ) | DISTRICT OF TENNESSEE |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |
| | ) | O P I N I O N |

BEFORE: KEITH, CLAY, and McKEAGUE, Circuit Judges.

**McKEAGUE, Circuit Judge.** Mario Hampton ("Hampton") pled guilty to the charge of being a convicted felon in possession of a firearm in violation of 18 U.S.C. § 922(g). Hampton appeals the district court's denial of his motion to suppress statements made while he was detained and questioned by police. For the reasons stated below we **AFFIRM**.

**I**

The underlying facts of Hampton's guilty plea are not in dispute. Rather, the only issue on appeal is whether Hampton knowingly, intelligently, and voluntarily waived his Fifth Amendment right against self-incrimination. Accordingly, we discuss the facts leading to Hampton's claim on appeal.

Hampton awoke the morning of July 31, 2008 between 10:00 and 11:00 a.m. and was arrested at 1:30 a.m. on August 1, 2008, in connection with a shootout with police in Memphis, Tennessee's Hillview Apartments. After Hampton's arrest, he was transported to the Felony Response Office where he was held until he was booked at 7:00 a.m. The police put a 48-hour hold on Hampton, beginning at 2:00 a.m. Hampton remained in a holding cell until 1:30 p.m. on August 1, 2008, where detectives then transported him to a small room in the robbery unit where he was shackled to a bench and tested for gunshot residue. Hampton was then transferred to a larger room where he was again shackled and given his first meal since his arrest. At 3:00 p.m., Hampton was read his *Miranda* rights and then read aloud a written "Advice of Rights" form which Hampton signed. Included in the form was language affirming that Hampton sought to provide a statement of his "own free will, without threats, promises, or coercion from anyone." The Advice of Rights form also shows that Hampton answered affirmatively to whether he "understands the rights that have been explained to him." Once the document was read and signed, officers began interviewing Hampton at 3:15 p.m.

Hampton was questioned for several hours until officers asked him to execute a signed statement at approximately 6:00 p.m. Before signing, Hampton was *Mirandized* for the second time and again acknowledged that he understood his rights. Thereafter, Hampton was left shackled to a bench as the officers reviewed his signed statement. Upon reviewing the statement, the officer's noticed some "discrepancies" and decided to question Hampton again. Returning to the interrogation room, the officers found Hampton lying on the floor, still shackled to the chair, sleeping. They woke him up and at 8:40 p.m., Hampton was read his *Miranda* rights for a third time and signed a second statement. Hampton was questioned and had written a statement approximately five minutes after he was woken by the officers. Hampton was returned

to his cell almost twenty-four hours after the incident and 34 to 35 hours since his last night's sleep.

Hampton filed a motion to suppress on September 22, 2010. Hampton claimed that his waiver of his Fifth Amendment rights was not knowing or voluntary because he was subjected to police coercion and was intoxicated and sleep-deprived. Specifically, Hampton claimed that he was exhausted based on the fact that he had been awake between 28 to 35 hours by the time he signed the "Advice of Rights" forms. A suppression hearing was held on February 28, 2011. Hampton testified that, after waking between 10:00 and 11:00 a.m. on July 31, 2014, he drank "about a fifth" of cognac, between twelve and twenty-four "long neck" bottled beers and some bourbon. Hampton, however, affirmed that this was a usual amount of alcohol for him. Despite Hampton's heavy consumption of alcohol, three officers who were involved with questioning Hampton all testified that he did not appear intoxicated, incoherent, or portray any signs of falling asleep while being questioned.

In the Report and Recommendation, the magistrate judge found that Hampton knowingly and voluntarily waived his right against self-incrimination. The magistrate judge found that "[a]ll officers that interviewed [Hampton] found him to be functional, coherent, and showing no signs that he was not able to knowingly and intelligently respond." R. 114, Report and Recommendation at 15, PageID # 430. Further, the magistrate judge added that "the record does not reflect that . . . [Hampton] stated that he was simply too exhausted to continue." *Id.* The district court also added that "[t]he Court finds that Defendant was neither intoxicated nor sleep deprived, and that the officers' testimony is a credible basis for those determinations." R. 124, Dist. Ct. Order at 16, PageID # 471.

The magistrate judge considered the "totality of the circumstances" in ruling, including:

> Defendant was thirty-two years old at the time of his interrogation, was able to read and write, and had [a] tenth grade education. Defendant was advised of his *Miranda* rights on three occasions within a period of approximately six hours: before any questioning began; before the taking of the first official statement; and before the taking of the second official statement. The questioning only took place for approximately six hours during an afternoon and early evening. The[ ] record reflects that Defendant was not subjected to any official coercion or deprivation of food, water, or sleep.

R. 114, Report & Recommendation at 17, PageID # 432. Furthermore, the magistrate judge found that Hampton was familiar with the justice system, having been arrested approximately 25 times and questioned by law enforcement on previous occasions. The magistrate judge finally concluded that "the totality of the circumstances demonstrate[d] that the Government has met its burden that the *Miranda* warnings were properly provided and that the Defendant voluntarily, knowingly, and intelligently waived his rights." *Id.* at 18, PageID # 433.

After engaging in a de novo review of the record, and in light of the magistrate judge's Report and Recommendation, the district court found that Hampton's claim of "sleep deprivation and exhaustion" was not supported by the facts or the law. The district court accepted the magistrate judge's recommendation, and denied Hampton's motion to suppress. Hampton thereafter pled guilty to the charge of being a previously convicted felon in possession of a firearm in violation of 18 U.S.C. § 922(g), reserving the right to appeal the district court's ruling on the motion to suppress. Hampton filed the instant appeal.

**II**

A.  Standard of Review

When reviewing a district court's decision on a motion to suppress, we review findings of fact for clear error and conclusions of law de novo. *United States v. Torres-Ramos*, 536 F.3d 542, 549 (6th Cir. 2008). Because the district court denied Hampton's motion to suppress, we

review all evidence in the light most favorable to the Government. *Id.* (citing *United States v. Long*, 464 F.3d 569, 572 (6th Cir. 2006)).

   B. *Miranda* Waiver

   The Fifth Amendment to the United States Constitution prohibits an individual from being "compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. The Supreme Court has made clear that "certain interrogation techniques, either in isolation or as applied to the unique characteristics of a particular suspect, are so offensive to a civilized system of justice that they must be condemned under the Due Process Clause of the Fourteenth Amendment." *Miller v. Fenton*, 474 U.S. 104, 109 (1985).  Under *Miranda v. Arizona*, 384 U.S. 436 (1966), an individual who is "taken into custody or otherwise deprived of his freedom by the authorities in any significant way and is subjected to questioning," *id*. at 478, must be provided information on the following "[p]rocedural safeguards" to protect his privilege against self-incrimination:

> He must be warned prior to any questioning that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires.

*Id.* at 479.

   A suspect may elect to waive his *Miranda* rights if the waiver is made "voluntarily, knowingly and intelligently." *Id.* at  444.  Whether a waiver has been properly made depends on two factors.  First, whether the right was relinquished voluntarily turns on whether the waiver was the product of a "free and deliberate choice" rather than the result of "intimidation, coercion, or deception." *Moran v. Burbine*, 475 U.S. 412, 421 (1986).  Second, whether it was knowingly and intelligently waived turns on a determination that the waiver was made "with a full awareness of both the nature of the right being abandoned and the consequences of the decision

to abandon it." *Id.* In evaluating both factors, courts must consider the "totality of the circumstances surrounding the interrogation." *Id.* (internal quotation marks omitted). Specifically with respect to inquiring as whether the waiver was knowing and intelligent, courts consider the defendant's age, education, intelligence, prior experience with the criminal justice system, the length and nature of the questioning, the advice regarding *Miranda* rights, and the use of physical punishment, such as deprivation of food or sleep. *Murphy v. Ohio*, 551 F.3d 485, 511 (6th Cir. 2009).

### 1. *Knowing and Intelligent*

Hampton argues that the district court erred in finding that he made a "knowing and intelligent" waiver of his *Miranda* rights. Specifically, Hampton points to the fact that the police officers knew of Hampton's exhaustion, or were at least aware that they had to wake him up at one point to continue questioning him. Hampton claims this is "precisely" the sort of prolonged questioning and deprivation of sleep envisioned by the Supreme Court which should have rendered Hampton not capable of providing a "knowing and intelligent"[1] waiver of his Fifth Amendment rights.

---

[1] Hampton claims that the district court erred in its description and application of the standard for a "knowing and intelligent" waiver. The district court relied on *United States v. Newman*, 889 F.2d 88, 94 (6th Cir. 1989), for the proposition that "'[e]vidence that a defendant suffered, at the relevant time, from a condition or deficiency that impaired his cognitive or volitional capacity' is never, standing alone, sufficient to conclude that the confession is involuntary or a waiver is unknowing; 'some element of police coercion is always necessary.'" R. 124, Dist. Ct. Order at 19, PageID # 474. Hampton is correct that *Newman* and the other cases cited by the district court discuss specifically the standard for determining whether a waiver was "voluntary." Hampton is correct to note that the district court should have explicitly weighed the factors, such as Hampton's age, education, intelligence, the length of the questioning, the prolonged nature of questioning, and the deprivation of food and sleep. *Murphy v. Ohio*, 551 F.3d 485, 511 (6th Cir. 2009). However, other courts, have similarly conflated the inquiries of "voluntariness" and "knowing and intelligent." *See*, *e.g., Wernert v. Arn*, 819 F.2d 613, 616 (6th Cir. 1987). The magistrate judge's Report and Recommendation, which the district court adopted in full, considered each of the factors stated in *Murphy*. R. 114, Report and Recommendation at 16–17,

In cases involving sleep deprivation or intoxication, courts most often focus on the perceptions of the involved officers and not the defendant's state of mind, in order to determine whether a defendant's statement is "knowing" and "voluntary." The Supreme Court in *Colorado v. Connelly*, 479 U.S. 157, 170 (1986), reasoned that "[t]he sole concern of the Fifth Amendment, on which *Miranda* was based, is governmental coercion." Following this logic, the Court held that the admission of a confession to murder by a chronic schizophrenic, in a psychotic state, absent state coercion, did not violate the Constitution. *Id.* The Court considered what the officers questioning the defendant observed. The Court noted that to one officer, "respondent appeared to understand fully the nature of his acts," while another officer "perceived no indication whatsoever that respondent was suffering from any kind of mental illness." *Id.* at 160–61. Similarly in *Wernert v. Arn*, 819 F.3d 613 (6th Cir. 1987), the Court upheld the admission of a confession even though the defendant claimed that her drug and alcohol ingestion the day before and her lack of food and sleep prohibited her from voluntarily waiving her rights. *Id.* at 616. The Court in *Wernert* focused on the fact that the defendant appeared "normal" to the officers and was able to operate a car. *Id.* Other Circuits have adopted similar approaches. *See*, *e.g., United States v. Palmer*, 203 F.3d 55, 60–62 (1st Cir. 2000) (valid waiver despite defendant's heroin withdrawal and use of anti-depressants); *Clagett v. Angelone*, 209 F.3d 370,

---

PageID # 431–32. The magistrate judge found no basis to conclude that Hampton's waiver was not "knowing and intelligent." *Id.* at 17, PageID # 432. The magistrate judge noted that Defendant was thirty-two years old at the time of the interrogation, was able to read and write, and had a tenth grade education. *Id.* The magistrate judge also found that the record reflected that Hampton was not subjected to any official coercion or deprivation of food, water, or sleep and concluded Hampton knowingly and intelligently waived his rights. *Id.* While the district court did not explicitly consider each factor, the district court's thorough consideration of Hampton's claims of intoxication and sleep deprivation provide no basis for a finding that the district court erred in applying the legal standard. As we review de novo the district court's findings, we apply the appropriate standard for determining whether a waiver was "knowing and intelligent" and conclude that the district court did not err in its final holding.

382 (4th Cir. 2000) (valid waiver despite intoxication because defendant did not slur speech or have trouble walking).

We do not find clear error in the district court's finding that the Hampton knowingly and intelligently waived his *Miranda* rights. Hampton was Mirandized three times in the course of questioning, and signed two separate *Miranda* waivers. With each waiver, Hampton affirmed his knowledge of his rights and executed each document and denied that he was under the influence of alcohol or drugs.

Furthermore, Hampton's claim that he was sleep deprived and thus could not make a "knowing and intelligent" waiver is without merit. Hampton claims that the magistrate judge estimated that he had been awake between 28 to 35 hours when he signed the "Advice of Rights" waivers. The magistrate judge "credited" that Hampton "awoke between 10:00 a.m. and 11:00 a.m. on July 31, 2008, was arrested in the late evening hours, was held into the early morning hours of August 1, 2008, and was interrogated in the afternoon and early evening of August 1, 2008." R. 114, Report & Recommendation at 15, PageID # 430. However, the magistrate judge concluded that this information was not sufficient to "require the conclusion that Defendant was too exhausted to knowingly and voluntarily waive his constitutional rights and provide two statements over a period of six hours." *Id.* We find no error in the magistrate judge's conclusion.

However, irrespective of whether Hampton slept during the time he was in police custody, the important inquiry is whether the interviewing officers perceived there to be any "impairments" to a knowing and intelligent waiver, when the totality of the circumstances are considered. As the district court made clear, each officer provided specific, in-depth testimony demonstrating that Defendant was alert and lucid. R. 124, Dist. Ct. Order at 15, PageID # 470.

The officers testified that Hampton appeared to understand everything and that his responses were "coherent." *Id.* No officer testified that Hampton appeared sleepy or otherwise disoriented during their interactions with him. And, while Hampton testified that he had consumed alcohol during the day prior to his arrest, none of the police officers testified that Hampton appeared intoxicated. We find no basis for questioning the district court's finding that Hampton was not so sleep deprived or intoxicated as to make a knowing and intelligent waiver of his Fifth Amendment rights. Hampton was thirty-two years old at the time of arrest, able to read and write, and had a tenth grade education. Hampton was familiar with the criminal justice system, having been arrested and *Mirandized* multiple times before. While he may not have slept in over twenty-four hours, Hampton's coherent and alert nature in responding to police questioning weighs in favor of the district court's findings. In light of the totality of the circumstances, we agree with the district court's conclusion that Hampton made a knowing and intelligent waiver of his *Miranda* rights.

### 2. Voluntary Waiver

A confession is involuntary if, in light of the totality of the circumstances, "the will of the accused has been overwhelmed by official pressure." *United States v. Wrice*, 954 F.2d 406, 411 (6th Cir. 1992). "When a defendant claims that a confession was coerced, the government bears the burden of proving by a preponderance of the evidence that the confession was in fact voluntary." *U.S. v. Mahan*, 190 F.3d 416, 422 (6th Cir. 1999) (internal quotations and citation omitted). This Court has established three requirements for finding that a confession was involuntary due to coercion: "(i) the police activity was objectively coercive; (ii) the coercion in question was sufficient to overbear the defendant's will; and (iii) the alleged police misconduct was the crucial motivating factor in the defendant's decision to offer the statement." *Id.* The

same "totality of the circumstances" consideration is involved in the voluntariness inquiry. *Id.* at 423.

Hampton's sole basis for claiming that he was "coerced" into waiving his rights is the mere fact that officers continued questioning him after waking him up following a break in questioning. The simple fact that Hampton fell asleep on the floor in between questioning in no way shows coercive activity on the part of the police, nor has Hampton pointed to any legal support for this conclusion. Rather, as both the magistrate judge and district court found, multiple officers testified in detail that Hampton was lucid, answered questions appropriately, and showed no signs of exhaustion or intoxication. Under the totality of the circumstances, and considering the factual findings of the district court, we find no error in the district court's conclusion that there was "no coercion, intimidation, or police misconduct . . . [and] Defendant's waiver of *Miranda* rights was valid." R. 124, Dist. Ct. Order at 20, PageID # 475.

### III

For the reasons stated above, we **AFFIRM** the district court's denial of Hampton's motion to suppress.